UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

UBIQUITI INC.,

                            Plaintiff,

        v.                                                      Civil No.: 20-CV-1312

PERASO TECHNOLOGIES INC., BILL McLEAN,
JIM WHITAKER, SHAWN ABBOT, DAVID
ADDERLEY, IMED ZINE and RIAD ZINE,

                            Defendants.

————————————————————————


**PERASO'S ANSWER
TO FIRST AMENDED COMPLAINT
AND COUNTERCLAIMS**


        Defendant PERASO TECHNOLOGIES INC. ("Peraso"), by its attorneys

Hodgson Russ LLP, for its answer and counterclaims to the First Amended Complaint of

plaintiff Ubiquiti Inc., states as follows:


        1.      With respect to paragraph 1, states that this is an action for declaratory

judgment and monetary damages.  The remaining assertions are legal conclusions to which no

response is required.  To the extent a response is required, Peraso denies the allegations in

paragraph 1.


        2.      Admits the allegations in paragraph 2.


        3.      Admits the allegations in paragraph 3.

4.     Denies that Mr. McLean is a resident of Toronto, Ontario; denies that Mr. McLean is or was a preferred shareholder of Peraso; and admits that Mr. McLean was the President, CEO, and a member of the board of directors of Peraso.

5.     Admits that Mr. Whitaker resides in Toronto, Ontario; admits that Mr. Whitaker was a member of the board of directors of Peraso; admits that Venturelink Innovation Fund Inc. is a preferred shareholder of Peraso; and denies knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 5 and therefore denies them.

6.     Denies that Shawn Abbott is a resident of Toronto, Ontario; admits that Mr. Abbott was a member of the board of directors of Peraso; admits that iNovia is a preferred shareholder of Peraso; and denies knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 6 and therefore denies them.

7.     Denies that Mr. Adderley is a resident of Toronto, Ontario; admits that Mr. Adderley was a member of the board of directors of Peraso; admits that Celtic is a preferred shareholder of Peraso; and denies knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 7 and therefore denies them.

8.     Admits that Mr. Imed Zine resides in Toronto, Ontario; and admits that Mr. Imed Zine was a member of the board of directors of Peraso; admits that Roadmap Capital, Inc. is a preferred shareholder of Peraso; and denies knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 8 and therefore denies them.

9.     Admits that Mr. Riadh Zine resides in Toronto, Ontario; admits that Mr. Riadh Zine was a member of the board of directors of Peraso; and denies knowledge or

information sufficient to form a belief as to the remaining allegations in paragraph 9 and therefore denies them.

## JURISDICTION AND VENUE

10.     Denies that Mr. McLean is a citizen of Canada; and admits the remaining allegations in paragraph 10.

11.     Admits that this Court has jurisdiction over Peraso and denies the remaining allegations in paragraph 11.

12.     Admits that venue is proper with respect to Peraso; denies that venue is proper for any other defendant; and denies the remaining allegations in paragraph 12.

13.     States that paragraph 13 asserts a conclusion of law to which no response is required and therefore denies the allegations in paragraph 13.

14.     Admits that Ubiquiti is a publicly traded company, and denies knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 14.

15.     Admits that Peraso is a venture-funded private company that develops integrated circuits for the 60 GHz wireless marketplace.

16.     Admits that Mr. McLean, Mr. Whittaker, Mr. Abbott, Mr. Adderly, Mr. Imed Zine, and Mr. Riadh Zine were members of the board of directors of Peraso and denies the remaining allegations in paragraph 16.

17.     Denies that Mr. McLean is a preferred share investor and therefore denies the applicability of the term "Preferred Share Investor" in this paragraph and throughout the

complaint; admits that Venturelink, iNovia, Celtic, and Roadmap were and are investors in Peraso prior to December 21, 2018 and through today; and denies the remaining allegations in paragraph 17.

18.     Denies knowledge or information sufficient to form a belief as to the allegations in paragraph 18 and therefore denies them.

19.     Admits that Charter Documents of Peraso set out the rights of preferred share investors; refers to the Charter Documents, including but not limited to the Articles and Unanimous Shareholders' Agreement, for their contents; and denies the remaining allegations in paragraph 19.

20.     Admits the allegations in paragraph 20.

21.     Admits that Peraso and Ubiquiti Networks Canada Inc. entered into Class C Series 1 Convertible Preferred Share Subscription Agreement (the "Subscription Agreement") simultaneously with the License Agreement and in consideration for the obligations undertaken by Peraso and Ubiquiti in the License Agreement; refers to the Subscription Agreement for its contents; and denies the allegations in paragraph 21.

22.     Denies the allegations in paragraph 22.

23.     Admits that Peraso agreed to develop Peraso chipsets for Ubiquiti as set forth in the terms of the License Agreement; refers to the License Agreement for its contents; and denies the remaining allegations in paragraph 23.

24.     Admits that the License Agreement contains three development milestones; admits that the language of the License Agreement is accurately quoted; and denies the remaining allegations in paragraph 24.

25.     Admits the allegations in paragraph 25.

26.     Admits that Peraso had to give notice of achievement of the development milestones; refers to the License Agreement for its terms; and denies the remaining allegations in paragraph 26.

27.     Admits that the License Agreement, paragraph 2.2 is accurately quoted in paragraph 27; refers to the License Agreement for its contents; and denies the remaining allegations in paragraph 27.

28.     Denies the allegations in paragraph 28.

29.     Admits only that Ubiquiti and Peraso were in contact between October 31, 2019 and December 11, 2019, and denies the remaining allegations in paragraph 29.

30.     Admits only that Ubiquiti and Peraso were in contact between October 31, 2019 and December 11, 2019, and denies the remaining allegations in paragraph 30.

31.     Admits only that Ubiquiti Networks Canada invested $5 million in Peraso of a $15 million Subscription Agreement; and denies the remaining allegations in paragraph 31.

32.     Denies the allegations in paragraph 32.

33.     Admits only that Peraso had accrued and unpaid dividends and denies the remaining allegations in paragraph 33.

34.     Admits that Peraso contacted a consultant to identify strategic investors for a possible capital raise; states that a possible merger and/or acquisition candidate emerged from that process; and denies the remaining allegations in paragraph 34.

35.     Denies the allegations in paragraph 35.

36.     Denies the allegations in paragraph 36.

37.     Denies the allegations in paragraph 37.

38.     Denies the allegations in paragraph 38.

39.     Admits only that Peraso issued a notice of default; refers to the notice for its terms and language; and denies the remaining allegations in paragraph 39.

40.     Admits only that Peraso issued a notice of default; refers to the notice for its terms and language; and denies the remaining allegations in paragraph 40.

41.     Denies the allegations in paragraph 41.

42.     Denies the allegations in paragraph 42.

43.     Admits the allegations in paragraph 43.

44.     Denies the allegations in paragraph 44.

45.     Admits that Peraso sent Ubiquiti a notice of termination of the License Agreement on January 16, 2020 based on Ubiquiti's failure to remedy the material breaches set forth in the notice of default; and denies the remaining allegations in paragraph 45.

46.     Denies the allegations in paragraph 46.

47.     States that Peraso performed under the terms of the License Agreement until it terminated that License Agreement; and denies the allegations in paragraph 47.

48.     Denies the allegations in paragraph 48.

49.     Denies the allegations in paragraph 49.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION FOR
### DECLARATORY JUDGMENT
### (Against Peraso)

50.     With respect to paragraph 50, repeats and re-alleges all paragraphs above as though fully set forth herein.

51.     Denies the allegations in paragraph 51.

52.     States that Peraso maintains that Ubiquiti materially breached the License Agreement; and states that the License Agreement was properly terminated; and denies the allegations in paragraph 52.

53.     States that the allegations in paragraph 53 call for a legal conclusion and do not require a response.

### SECOND CAUSE OF ACTION FOR
### BREACH OF CONTRACT
### (Against Peraso)

54.     With respect to paragraph 54, repeats and re-alleges all paragraphs above as though fully set forth herein.

55.     Denies the allegations in paragraph 55.

56.     Denies the allegations in paragraph 56.

57.     Denies the allegations in paragraph 57.

**THIRD CAUSE OF ACTION FOR**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against Peraso)**

58.     With respect to paragraph 58, repeats and re-alleges all paragraphs above as though fully set forth herein.

59.     With respect to paragraph 59, states that it is a legal conclusion to which no response is required.

60.     Denies the allegations in paragraph 60.

61.     Denies the allegations in paragraph 61.

**FOURTH CAUSE OF ACTION FOR**
**CONVERSION**
**(Against Peraso)**

62.     With respect to paragraph 62, repeats and re-alleges all paragraphs above as though fully set forth herein.

63.     Denies the allegations in paragraph 63.

64.     Denies the allegations in paragraph 64.

65.     Denies the allegations in paragraph 65.

**FIFTH CAUSE OF ACTION FOR**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against Individual Defendants)**

66.     With respect to paragraph 66, repeats and re-alleges all paragraphs above as though fully set forth herein.

67.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 67.

68.     States that this cause of action is not asserted against Peraso; admits only that the individual defendants were aware of the License Agreement; and denies the remaining allegations in paragraph 68.

69.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 69.

70.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 70.

71.     Denies the allegations in paragraph 71.

72.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 72.

73.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 73.

74.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 74.

75.     Denies the allegations in paragraph 75.

## SIXTH CAUSE OF ACTION FOR
## FRAUD
### (Against Individual Defendants)

76.     With respect to paragraph 76, repeats and re-alleges all paragraphs above as though fully set forth herein.

77.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 77.

78.     Denies the allegations in paragraph 78.

79.     Denies the allegations in paragraph 79.

80.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 80.

81.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 81.

82.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 82.

83.     States that this cause of action is not asserted against Peraso and denies the allegations in paragraph 83.

Peraso denies all allegations in the "WHEREFORE" paragraph of the Complaint, and denies that Ubiquiti is entitled to declaratory judgment, monetary damages, compensatory damages, interest, attorneys' fees or costs, or any other relief requested.

## DEFENSES

### First Defense

84.     Plaintiff's complaint, and each and every cause of action, fails to state a claim upon which relief can be granted.

### Second Defense

85.     Plaintiff has failed to mitigate its claimed damages.

### Third Defense

86.     Plaintiff's claims are barred by the doctrines of consent, ratification, and/or acquiescence.

### Fourth Defense

87.     Plaintiff's claims for equitable relief are barred by the doctrine of unclean hands.

### Fifth Defense

88.     Plaintiff is not entitled to injunctive relief for reasons that include that plaintiff had not suffered irreparable harm and plaintiff, had it actually suffered any injury, would have an adequate remedy at law.

### Sixth Defense

89.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### Seventh Defense

90.     Plaintiff's claims are barred by its material breaches of the License Agreement, the Subscription Agreement and other agreements.

**Eighth Defense**

91.     Plaintiff's fraud claim is not pleaded with the specificity required by Federal Rule of Civil Procedure 9(b).

**Ninth Defense**

92.     Plaintiff failed to meet a condition precedent.

**Tenth Defense**

93.     Peraso's termination of the License Agreement was proper under the law and in accordance with the terms of the License Agreement.

**COUNTERCLAIMS**

94.     Peraso is a corporation incorporated under the laws of the Province of Ontario, having a place of business at 144 Front Street West, Suite 685, Toronto, Ontario, M5J 2L7, Canada.

95.     Ubiquiti is a corporation incorporated under the laws of Delaware, having a place of business at 685 Third Ave, 27th Floor, New York, NY 10017.

96.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.  There is diversity of citizenship because Ubiquiti is a citizen of Delaware and New York and Peraso is a citizen of Canada.  These counterclaims are mandated by Rule 13(a) of the Federal Rules of Civil Procedure.

97.     This Court has personal jurisdiction over Ubiquiti because it is a corporation with a place of business in New York.  Ubiquiti has agreed to submit to the personal

jurisdiction of courts located in New York, New York, and has specifically submitted to the jurisdiction of this Court by filing this action as plaintiff

98.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Ubiquiti has agreed to submit to the personal jurisdiction of courts located in New York, New York, to adjudicate any suit, action, or proceeding arising out of or in connection with the License Agreement that is the subject of this dispute.

99.    Ubiquiti is a shareholder in Peraso.  At all relevant times, it received financial information from Peraso on a quarterly basis and was entitled to receive certain financial information upon request.

100.    Peraso and Ubiquiti entered into a License and Development Agreement ("License Agreement") on December 21, 2018 that was part of a larger transaction as referenced in plaintiff's Amended Complaint at ¶ 21.  The transaction included the License Agreement and the Subscription Agreement. Amended Complaint ¶ 21.  Ubiquiti's wholly-owned subsidiary, Ubiquiti Networks Canada, is party to the Subscription Agreement.  Ubiquiti directed and controlled all actions by Ubiquiti Networks Canada with respect to the Subscription Agreement.

101.    The License Agreement related to Peraso's development of chipsets.  A chipset is a set of electronic component which consists of a least one radio device, one baseband device, and typically, an antenna.  A material component of the License Agreement was the development of a next generation RF IC ("Rockfinch radio") as spelled out in the License Agreement.

102.    The definition of "Licensed Chipsets" under the License Agreement refers

to complete, multi-component chipsets as set forth in Schedule A to the License Agreement, not the individual parts.  Under the compliance requirements in the License Agreement, a Licensed Chipset is not compliant without the baseband, and the radio is not compliant without the baseband.

103.    The pricing agreed to under the License Agreement, Schedule A, required chipsets, not the component parts.

104.    The License Agreement contained certain deadlines, or milestones, that Peraso agreed to meet in exchange for equity investments into Peraso by Ubiquiti and its subsidiary.  Amended Complaint ¶ 21.  Those milestones are called Tranche Development Milestones.

105.    The Tranche Development Milestones were a material part of the License Agreement as they established the sequence of the development work.  The Tranche Development Milestones also set a schedule for investments in Peraso, providing a predictable capital flow to Peraso, allowing Peraso to continue development work and finance Peraso's operations.

106.    The Second Tranche Development Milestone was due on or before January 31, 2019.  The Third Tranche Development Milestone was due on or before October 31, 2019.

107.    On January 29, 2019, Peraso met the Second Tranche Development Milestone and gave proper notice to Ubiquiti under the terms of the License Agreement.

108.     Section 2.2 of the License Agreement required Ubiquiti to either accept or reject the achievement of the milestone in a specific manner, including a duty to act in good faith:

> Within 30 days of receipt of such notice, Customer will determine whether the Acceptance Criteria in respect of the applicable Milestone have been satisfied. At the end of each such 30 days period, Customer shall provide Peraso with written notice of rejection or acceptance of whether Peraso has demonstrated the satisfaction of the Acceptance Criteria in respect of the Development Milestone to the reasonable satisfaction of Customer, acting in good faith. If Customer believes that the Acceptance Criteria for the applicable Milestone have not been satisfied ("Rejection"), Customer will give Peraso notice in writing setting out in adequate detail the reason for such Rejection ("Notice of Defect").

109.     Ubiquiti did not confirm that the Acceptance Criteria for the Second Tranche Development Milestone had been satisfied, nor did Ubiquiti provide written notice of a Rejection setting forth in adequate detail the reason for such rejection.

110.     Ubiquiti's failure to do so constituted a material breach of the License Agreement.

111.     Peraso's achievement of the Second Tranche Development Milestone triggered a payment obligation under which Ubiquiti, through its subsidiary, was obligated to invest $2 million in Peraso.

112.     Ubiquiti did not make the required $2 million investment.

113.     Peraso determined that it would not take immediate action on this default, in an effort to not derail its work and risk damage to the ongoing relationship with Ubiquiti and

to continue focusing its efforts to meet the Third Tranche Development Milestone in October 2019.

114.    On February 8, 2019, Ubiquiti made clear in an email transmission from Todd Cramer to Peraso's Bill McLean that Ubiquiti was intending to develop products that used its own baseband component and ported the radio component developed by Peraso.  The License Agreement does not contemplate the sale of component parts.

115.    On June 4, 2019, Peraso communicated again to Ubiquiti that: (1) Peraso had met the Second Tranche Development Milestone on January 29, 2019; (2) Ubiquiti had not complied with Section 2.2 of the License Agreement; and (3)  Peraso was continuing its development work nevertheless in good faith.

116.    On July 26, 2019, Peraso's team shared the news with Ubiquiti that the chip tests were positive.  A detailed performance presentation was sent to Ying Chen, a Senior Engineer at Ubiquiti.

117.    Despite the preliminary results that indicated that the Third Tranche Development Milestone would be achieved, Ubiquiti nevertheless expressed that it wanted alternative performance to meet its own requirements that were not part of the Third Tranche Development Milestone.

118.    On August 26, 2019, about two months before Peraso's deadline for the Third Tranche Development Milestone of October 31, 2019, Ubiquiti expressed that it would not make the Third Tranche Development Milestone investment of $8 million unless the existing, bargained-for terms of the License Agreement were changed in two material ways:  (1) revisions

to the specifications to meet their own requirements; and (2) joint ownership over the intellectual property for Ubiquiti.

119.    Specifically, Mr. Cramer of Ubiquiti emailed Bill McLean, expressing that Ubiquiti required joint ownership of the intellectual property as part of a revised Third Tranche financing.  Ubiquiti's demand related to the Rockfinch radio component, including all of the supporting design files and documentation related to the semiconductor device.

120.    Peraso continued with its work toward the Third Tranche Development Milestone.

121.    From July 2019 through October 31, 2019, Ubiquiti made multiple unilateral requests to change the deliverables and specifications under the License Agreement. Peraso continued to work with Ubiquiti in good faith.

122.    Starting around August 26, 2019 and continuing until the Third Tranche Development Milestone deadline of October 31, 2019, Ubiquiti demanded that it be given the complete ownership rights to the intellectual property covered by the License Agreement. Ubiquiti threatened that it would not make the Third Tranche Development Milestone investment of $8 million in Peraso if its demand was not met.

123.    The License Agreement did not afford to Ubiquiti the ownership or manufacturing rights that it demanded, and Peraso rejected Ubiquiti's demand.

124.    On October 31, 2019, Peraso gave proper notice of satisfaction that it achieved the Third Tranche Development Milestone.

125.     Ubiquiti had 30 days under Section 2.2 of the License Agreement to provide a written notice of Rejection or acceptance.

126.     Ubiquiti did not confirm that the Acceptance Criteria set forth in the License Agreement had been met nor did Ubiquiti provide a written notice of Rejection.

127.     Ubiquiti's failure to do so constituted a material breach of the License Agreement.

128.     Ubiquiti did not make the required $8 million investment.

129.     Between October 31, 2019 and December 11, 2019, Peraso repeatedly inquired as to whether Ubiquiti would accept or reject the achievement of the Third Tranche Development Milestone.  Peraso asked Ubiquiti repeatedly whether anything further was required from it.

130.     Ubiquiti offered some criticisms of the performance but did not issue any written rejection related to the Acceptance Criteria.

131.     Further, any claim of performance issues related to the Rockfinch radio component are undermined by Ubiquiti's subsequent February 2020 order for 100,000 units of the Rockfinch radio component that met the specifications set forth in the Third Tranche Development Milestone.

132.     On or about October 1, 2019, Peraso informed Ubiquiti that a term sheet for financing had been issued and it was invited to participate.  The financing was in the form of

a convertible note.  The only reason financing was necessary was because the lack of promised investments put Peraso at risk.

133.    In November 2019, Ubiquiti became aware of Peraso's deteriorating financial situation in the context of a potential offer for a purchase of the company from a third party.

134.    On December 11, 2019, Peraso's CEO Bill McLean, together with its counsel, had a phone call with two Ubiquiti executives, Todd Cramer and Hartley Nisenbaum to discuss the status of the License Agreement.  During the phone call, Mr. McLean advised them that Ubiquiti was in default because it had neither accepted nor rejected the achievement of the Third Tranche Development Milestone.

135.    Immediately following that call, Mr. McLean summarized the parties' positions in an email to Mr. Cramer and Mr. Nisenbaum, informing Ubiquiti that Peraso's counsel would be sending a default letter to Ubiquiti.

136.    Also on or around December 11, 2019, Ubiquiti stated that it did not believe that Peraso had a viable financing plan and continued to insist that Peraso turn over the intellectual property rights to Ubiquiti.

137.    Peraso's counsel then, also on December 11, 2019, sent a written notice of default to Ubiquiti, demanding cure of the default within 30 days.

138.    Ubiquiti did not cure the default.

139.    On January 16, 2020, Peraso terminated the License Agreement by a letter

from its counsel to Ubiquiti.

140.    In December 2019, Peraso completed a financing for short term capital to remain solvent and continue operating, (the "December Financing").

141.    Ubiquiti had the right to participate in the financing on the same terms but declined to do so.

142.    On January 27, 2020, Peraso entered into exclusive negotiations with a third-party potential buyer for a potential sale of the entire company.  The exclusivity period for the negotiations ran until March 1, 2020.

143.    On February 14, 2020, Ubiquiti sued Peraso in this action seeking a declaration that Ubiquiti had not breached the License Agreement.

144.    The potential buyer then ended negotiations with Peraso.

145.    On March 2, 2020, the disinterested members of Peraso's board of directors approved a new financing subject to shareholder approval by class vote in order for Peraso to remain solvent and continue its operations.  Particularly, Peraso did not have sufficient funds to meet its payroll obligations which were due on March 13, 2020.

146.    On March 2, 2020, Ubiquiti received a Notice of Special Meeting of Shareholders to be held on March 12, 2020 and a Form of Proxy.

147.    On March 3, 2020, Peraso sent a notice of pre-emptive rights to shareholders, including Ubiquiti.

148.    On March 10, 2020, Ubiquiti amended its lawsuit to include additional

claims against Peraso and added Peraso's individual officers and directors to the lawsuit alleging they committed fraud.

149.    Ubiquiti did not exercise any pre-emptive rights in response to the Notice of Special Meeting to Shareholders.

150.    On March 11, 2020, Ubiquiti tendered an unreasonable "loan-to-own" proposal after 4 p.m. on the day before the March 12, 2020 shareholder meeting which was to be held at 8 a.m.  The proposal did not include any material terms, such as amount and closing date. Ubiquiti's loan proposal acknowledged that holders of the convertible debt had security interests over Peraso's intellectual property and Ubiquiti would require subordination of that security interest.

151.    Ubiquiti then threatened that all shareholders needed to be informed of its vague and inchoate proposal.  Ubiquiti's belated proposal was designed only to cause confusion and distract from the formal proposal set forth in the proxy sent to shareholders.  By its very terms, Ubiquiti's proposal was incapable of being carried out and completed.

152.    Ubiquiti did not attend the shareholder meeting where shareholders were made aware of Ubiquiti's loan-to-own proposal.

153.    Ubiquiti had the right to vote on the existing financing proposal set forth in the proxy.  It did not vote against the financing.

154.    On March 12, 2020, necessary shareholder approval was obtained.

155.    On March 13, 2020, the financing closed, payroll was met.  All

shareholders, including Ubiquiti, were informed of the closing.

156.    As a result of Ubiquiti's breach and its failure to make and/or have made the required investments, Peraso has suffered grave harm to its business and operations.

## First Counterclaim
### (Declaratory Judgment)

157.    Peraso repeats and realleges paragraphs 94 through 156 as if set forth fully herein.

158.    Peraso fulfilled all of its obligations under the License Agreement.

159.    Ubiquiti did not fulfill all of its obligations under the License Agreement and materially breached the License Agreement.

160.    Ubiquiti claims that Peraso improperly terminated the License Agreement.

161.    Peraso properly terminated the License Agreement.

162.    The dispute between Peraso and Ubiquiti is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C.A. ¶¶ 2201, 2202.

## Second Counterclaim
### (Breach of Contract)

163.    Peraso repeats and realleges paragraphs 94 through 162 as if set forth fully herein.

164.    Peraso has fulfilled all of its obligations under the License Agreement and is not in breach of any contract or agreement with Ubiquiti.

- 22 -

165.     Ubiquiti did not perform under the License Agreement.

166.     Ubiquiti breached the License Agreement by not complying with Section 2.2 of the License Agreement.

167.     Ubiquiti also breached the express duty of good faith as set forth in the License Agreement.

168.     Ubiquiti's breaches substantially defeated the purpose of the contract and goes to the very root of the contract.

169.     As a result of the breaches by Ubiquiti, Peraso has been irreparably harmed and damaged in an amount to be determined at trial.

<u>**Third Counterclaim**</u>
**(Breach of Duty of Good Faith and Fair Dealing)**

170.     Peraso repeats and realleges paragraphs 94 through 169 as if set forth fully herein.

171.     Implied in all contracts is a covenant of good faith and fair dealing which obligates the parties to act in good faith, to use their best efforts to deal fairly with one another and to do nothing that will impede the other party from obtaining the benefits of the contract.

172.     By its conduct, Ubiquiti has breached the covenant of good faith and fair dealing and has deprived, impaired, destroyed and injured the rights of Peraso under the License Agreement and the Subscription Agreement.

173.     Ubiquiti intentionally and maliciously frustrated the purpose of the License Agreement.

174.    As a result of Ubiquiti's breach of the covenant of good faith and fair dealing, Peraso has suffered irreparable harm, general damages, special damages, and damages continuing into the future, in an amount to be determined at trial.

### Fourth Counterclaim
**(Prima Facie Tort)**

175.    Peraso repeats and realleges paragraphs 94 through 174 as if set forth fully herein.

176.    Ubiquiti intended to, and in fact did, cause harm to Peraso.

177.    Peraso was harmed by Ubiquiti's conduct and suffered special damages including diminution in the value of Peraso's business and costs associated with alternative financing, along with damage continuing into the future.

178.    Ubiquiti engaged in the campaign of intentional harm with no excuse or justification.

179.    Ubiquiti's conduct in damaging Peraso's business and depriving Peraso of capital investments has caused irreparable and grave harm to Peraso's business as well as damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Peraso hereby demands judgment against Ubiquiti as follows:

1.    A declaration that:  (a) Peraso properly and effectively terminated the License Agreement; and (b) Ubiquiti breached the License Agreement.

2.      Monetary damages, including special damages and consequential damages, consisting of:

    a)      Remuneration for costs and expenses of seeking alternative financing, in an amount of at least $1 million.

    b)      Diminution in the value of Peraso's business of at least $100 million as a result of Ubiquiti's conduct;

3.      In the alternative to a declaration that Peraso properly and effectively terminated the License Agreement, then rescission of the License Agreement;

4.      Compensation in the amount of at least $1 million for damage to goodwill and reputation of Peraso;

5.      Punitive damages in the amount of at least $10 million;

6.      Costs, disbursements, and reasonable attorneys' fees for the defense of Ubiquiti's claims and prosecution of its own claims.

Dated: March 27, 2020

**HODGSON RUSS** LLP
*Attorneys for Defendant Peraso Technologies Inc.*

By: _____s/Jodyann Galvin_____
       Jodyann Galvin
jgalvin@hodgsonruss.com
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
Tel:  716.856.4000

- 25 -