UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UBIQUITI INC.,

                              Plaintiff,

         v.                                              Civil No.: 20-CV-1312

PERASO TECHNOLOGIES INC., BILL McLEAN,
JIM WHITAKER, SHAWN ABBOT, DAVID
ADDERLEY, IMED ZINE and RIAD ZINE,

                              Defendants.

---

# MEMORANDUM OF LAW IN SUPPORT OF
# JOINT MOTION TO DISMISS BY
# WILLIAM A. MCLEAN, RIADH ZINE, IMED ZINE,
# WILLIAM JAMES WHITAKER, AND DAVID M. ADDERLEY

**HODGSON RUSS LLP**
Jodyann Galvin
David Short (Admitted in VA)
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202-4040
716.856.4000
*Attorneys for William A. McLean, William James*
*Whitaker, David M. Adderley, Imed Zine,*
*and Riadh Zine*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

Preliminary Statement...................................................................................................1

Factual Allegations ......................................................................................................1

Argument ......................................................................................................................3

I.      THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE
        INDIVIDUAL DEFENDANTS............................................................................4

        A.      Ubiquiti's Allegations Do Not Support The Exercise of Jurisdiction Over
                The Individual Defendants......................................................................6

                1.      Ubiquiti's allegations do not give rise to jurisdiction under the
                        long-arm statute. ........................................................................6

                2.      The exercise of personal jurisdiction over the Individual
                        Defendants would violate principles of due process....................8

                3.      Conclusory pleadings made upon information and belief are
                        insufficient to support the exercise of personal jurisdiction. ......10

        B.      Ubiquiti Cannot Obtain Personal Jurisdiction Over The Individual
                Defendants Through Its Jurisdiction Over Peraso. .................................11

                1.      The forum selection clause cannot serve as a basis for jurisdiction
                        over the Individual Defendants.................................................11

                2.      The Amended Complaint does not allege facts supporting
                        jurisdiction over the Board Defendants under an agency theory.............13

II.     UBIQUITI'S CLAIMS SOUNDING IN FRAUD MUST BE DISMISSED ...................14

        A.      Ubiquiti Makes No Allegation About Reasonable Reliance ................................16

        B.      Ubiquiti Has Not Alleged Facts Supporting Scienter ...........................................17

                1.      Ubiquiti's theory of profit is too speculative and generalized to
                        establish scienter. .......................................................................19

                2.      McLean is not a preferred shareholder. ....................................20

        C.      Ubiquiti Does Not Allege Facts Supporting The Board Defendants' Role
                In The Purported Fraud..........................................................................21

i

## **TABLE OF CONTENTS - cont'd**

PAGE

D.    Ubiquiti's Claim For Tortious Interference With Contract Must Be Dismissed................................................................................................23

Conclusion ................................................................................................................25

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Aaacon Auto Transp., Inc. v. Barnes*,
    603 F. Supp. 1347 (S.D.N.Y. 1985).....................................................................................10

*In re AlphaStar Ins. Grp. Ltd.*,
    383 B.R. 231 (Bankr. S.D.N.Y. 2008)..............................................................................16

*Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*,
    328 F. Supp. 3d 329 (S.D.N.Y. 2018)................................................................................5

*Alzal Corp. v. Emporio Motor Grp., L.L.C.*,
    2013 WL 3866633 (S.D.N.Y. July 26, 2013) ..................................................................7, 8

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    93 F. Supp. 2d 424 (S.D.N.Y. 2000)............................................................................19, 20

*AMPA Ltd. v. Kentfield Capital LLC*,
    2001 WL 204198 (S.D.N.Y. Mar. 1, 2001) ....................................................................13

*AmTrust Fin. Servs., Inc. v. Lacchini*,
    260 F. Supp. 3d 316 (S.D.N.Y. 2017)............................................................................5, 8

*Arma v. Buyseasons, Inc.*,
    591 F. Supp. 2d 637 (S.D.N.Y. 2008)..............................................................................13

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987)........................................................................................................9, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...............................................................................................18

*Bay Harbour Mgmt. LLC v. Carothers*,
    282 F. App'x 71 (2d Cir. 2008) .......................................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................3

*Canelle v. Russian Tea Room Realty LLC.*,
    2002 WL 287750 (S.D.N.Y. Feb. 27, 2002).....................................................................23

## TABLE OF AUTHORITIES - cont'd

Page(s)

*Casville Invs., Ltd. v. Kates*,
    2013 WL 3465816 (S.D.N.Y. July 8, 2013) ..........................................................................12

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)...............................................................................................18

*Competitive Assocs., Inc. v. Fire Fly Enter., Inc.*,
    59 F.R.D. 336 (S.D.N.Y. 1972) .........................................................................................22

*de Atucha v. Hunt*,
    128 F.R.D. 187 (S.D.N.Y. 1989) .......................................................................................22

*Dragon State Int'l Ltd. v. Keyuan Petrochemicals, Inc.*,
    2016 WL 439022 (S.D.N.Y. Feb. 3, 2016).....................................................................11, 12

*Duran v. Henkel of Am., Inc.*,
    --- F. Supp. 3d ---, 2020 WL 1503456 (S.D.N.Y. Mar. 30, 2020)..........................................16

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
    343 F.3d 189 (2d Cir. 2003)...............................................................................................16

*Feasby v. Industri-Matematik Int'l Corp.*,
    2003 WL 22976327 (S.D.N.Y. Dec. 19, 2003) ...................................................................23

*In re Gen. Media, Inc.*,
    368 B.R. 334 (Bankr. S.D.N.Y. 2007)................................................................................23

*Guo Jin v. EBI, Inc.*,
    2008 WL 896192 (E.D.N.Y. Mar. 31, 2008).......................................................................10

*ICD Holdings S.A. v. Frankel*,
    976 F. Supp. 234 (S.D.N.Y. 1997)......................................................................................16

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D.N.Y. 2009).................................................................................24

*Jasper & Black, LLC v. Carolina Pad Co., LLC*,
    2012 WL 413869 (S.D.N.Y. Feb. 9, 2012)..........................................................................20

*Jonas v. Estate of Leven*,
    116 F. Supp. 3d 314 (S.D.N.Y. 2015)..............................................................................13, 14

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)...........................................................................................19, 20

iv

## <u>TABLE OF AUTHORITIES - cont'd</u>

Page(s)

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998)..............................................................................13, 14

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998)....................................................................................................5

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..................................................................................................16

*Leviton Mfg. Co. v. Reeve*,
    942 F. Supp. 2d 244 (E.D.N.Y. 2013) ..................................................................................12

*M & M Packaging, Inc. v. Kole*,
    183 F. App'x 112 (2d Cir. 2006) ............................................................................................7

*Melnick v. Adelson-Melnick*,
    346 F. Supp. 2d 499 (S.D.N.Y. 2004)....................................................................................5

*Mende v. Milestone Tech., Inc.*,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003)..................................................................................13

*Miller v. Mercuria Energy Trading, Inc.*,
    291 F. Supp. 3d 509 (S.D.N.Y. 2018)..................................................................................12

*Morin v. Trupin*,
    747 F. Supp. 1051 (S.D.N.Y. 1990)......................................................................................22

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)..................................................................................15

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2001)..................................................................................................19

*Passelaigue v. Getty Images (US), Inc.*,
    2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018) ........................................................................17

*PDK Labs, Inc. v. Friedlanden*,
    103 F.3d 1105 (2d Cir. 1997)................................................................................................10

*Penachio v. Benedict*,
    461 F. App'x 4 (2d Cir. 2012) ............................................................................................3, 5

*PetEdge, Inc. v. Garg*,
    234 F. Supp. 3d 477 (S.D.N.Y. 2017)..............................................................................21, 22

## TABLE OF AUTHORITIES - cont'd

Page(s)

*Phillips v. LCI Int'l, Inc.*,
  190 F.3d 609 (4th Cir. 1999) .....................................................................19

*Poindexter v. EMI Record Grp. Inc.*,
  2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ...........................................20

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)..................................................................15, 23

*Russell Pub. Grp., Ltd. v. Brown Printing Co.*,
  2014 WL 1329144 (S.D.N.Y. Apr. 3, 2014)................................................17

*Segal v. Gordon*,
  467 F.2d 602 (2d Cir. 1972)........................................................................22

*Singer v. Bell*,
  599 F. Supp. 350 (S.D.N.Y. 1984)..............................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................18

*United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*,
  766 F. Supp. 113 (S.D.N.Y. 1991)................................................................7

*Wash. Capital Ventures, LLC v. Dynamicsoft, Inc.*,
  373 F. Supp. 2d 360 (S.D.N.Y. 2005)..........................................................17

*Whitaker v. Am. Telecasting Inc.*,
  261 F.3d 196 (2d Cir. 2001)...........................................................................7

*Whitaker v. Fresno Telsat, Inc.*,
  87 F. Supp. 2d 227 (S.D.N.Y. 1999)..............................................................9

*WorldCare Ltd. Corp. v. World Ins. Co.*,
  767 F. Supp. 2d 341 (D. Conn. 2011)............................................................9

**State Cases**

*Dunkin' Donuts v. Liberatore*,
  138 A.D.2d 559 (2d Dep't 1988).................................................................17

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*,
  296 A.D. 2d 103 (1st Dep't 2002)................................................................24

### <u>TABLE OF AUTHORITIES - cont'd</u>

Page(s)

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
  8 N.Y.3d 422 (2007) ................................................................................................24

**Rules**

CPLR § 302..............................................................................................6, 7, 10, 13

Federal Rule of Evidence 201(b)(2) ...............................................................10

Federal Rule of Civil Procedure 9(b)...................................1, 4, 15, 19, 22, 23, 24, 25

Federal Rule of Civil Procedure 12(b)(2) .........................................3, 4, 5, 7, 10, 25

Federal Rule of Civil Procedure 12(b)(6) ...........................................3, 4, 25

**Preliminary Statement**

Plaintiff Ubiquiti Inc. sued Peraso Technologies Inc. for declaratory judgment that Ubiquiti had not breached its contract with Peraso—in essence, a garden-variety contract action. Ubiquiti then amended its complaint to add current and former directors of Peraso in their personal capacities for both fraud (Sixth Cause of Action) and tortious interference (Fifth Cause of Action). Ubiquiti's Amended Complaint against the individuals does not—and cannot— come close to alleging facts supporting jurisdiction, which is Ubiquiti's burden. And if jurisdiction exists, Ubiquiti's Fifth and Sixth Causes of Action should still be dismissed because they fail to meet the pleading standards generally and under Rule 9(b).

Ubiquiti would not be left without a forum to bring its contorted variation of shareholder claims. Ubiquiti knows that its claims could be brought in Ontario, Canada because Ubiquiti's wholly-owned subsidiary, which is a Peraso preferred shareholder, sued these same defendants one month ago for alleged wrongdoing as directors. Ubiquiti's claims in this action belong there. Ubiquiti's half-hearted pleading in this Court seems to indicate that Ubiquiti knows that, too. This Court should therefore dismiss the Fifth and Sixth Causes of Action with prejudice and not permit further amendment.

**Factual Allegations**

The relevant facts and factual allegations can be summarized as follows: Peraso Technologies Inc. is a corporation incorporated and headquartered in Canada. Dkt. 10, ¶ 3. Ubiquiti Inc. is a corporation incorporated in Delaware and headquartered in New York. Dkt. 10, ¶ 1. William McLean was Peraso's CEO and President, and is an Arizona resident. Dkt. 10, ¶ 4; Declaration of William A. McLean, ¶¶ 2, 4. Jim Whitaker, David Adderley, Imed

Zine, and Riadh Zine (collectively, the "Board Defendants" and, with McLean, the "Individual Defendants")[1] were on Peraso's Board of Directors, and held positions with entities (the "Venture Funds") that owned preferred shares in Peraso.  Dkt. 10, ¶¶ 3-9.  The Board Defendants are all residents of Ontario, Canada.  Declaration of Riadh Zine, ¶ 5; Declaration of Imed Zine, ¶ 5; Declaration of David M. Adderley, ¶ 4, Declaration of William James Whitaker, ¶ 4.

Ubiquiti had a License and Development Agreement ("LDA") with Peraso, in which Peraso agreed to supply Ubiquiti "certain chipsets."  Dkt. 10, ¶¶ 20, 23.  McLean was Peraso's primary contact with Ubiquiti and had negotiated the LDA with Ubiquiti representatives over the phone.  McLean Dec., ¶ 6.  The Board Defendants were not directly involved in negotiating the LDA with Ubiquiti.  R. Zine Dec., ¶¶ 7-9; I. Zine Dec., ¶¶ 7-9; Adderley Dec., ¶ 6; Whitaker Dec., ¶ 6.  Under the terms of the LDA, Ubiquiti had 30 days to respond to a Default Notice submitted by Peraso.  Dkt. 10, ¶ 43.

On December 11, 2019, Peraso issued to Ubiquiti a Default Notice of the terms of the LDA relating to development milestones.  Dkt. 10, ¶ 39.  Ubiquiti alleges that, on December 11, 2019, the same day that Ubiquiti was provided with the Default Notice, McLean "advised Ubiquiti" that the Default Notice "did not require a response."  Dkt. 10, ¶ 44.  Ubiquiti pleads "upon information and belief" that McLean had been acting in concert with the Board Defendants to terminate the LDA.  Dkt. 10, ¶ 38.  Ubiquiti further pleads "upon information and belief" that this was to "increase the likelihood that Peraso would be acquired" by a third-party

---

[1]     Shawn Abbott, a former Peraso director, has not been served with the original or Amended Complaint, so he is not a movant but reserves all rights to make this motion.

2

company.  Dkt. 10, ¶ 38.  Ubiquiti also pleads "upon information and belief" that the third-party

company's acquisition of Peraso would have favored preferred shareholders and therefore

personally benefitted the Individual Defendants.  Dkt. 10, ¶¶ 32-38.  McLean is not a preferred

shareholder.  McLean Dec., ¶ 9.  Ubiquiti did not respond to the Default Notice within 30 days,

and alleges that this was because of McLean's representation.  Dkt. 10, ¶¶ 82-83.  Peraso then

notified Ubiquiti that the LDA had been terminated, and Ubiquiti pleads "upon information and

belief" that the notice of termination was submitted to the third-party company.

## <u>ARGUMENT</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2)

prior to discovery, jurisdiction must be supported with sufficient factual allegations.  *See*

*Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012).  Likewise, to survive a motion to dismiss

under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

But a court is "not bound to accept as true a legal conclusion couched as a factual allegation" and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" must be disregarded.  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).  This standard

is heightened when pleading fraud or mistake.  *Id*. at 686.

Ubiquiti alleges one act, an alleged misrepresentation by one defendant, but does

not include factual allegations that remotely tie that act to New York.  Nor does Ubiquiti allege

facts showing that the alleged misrepresentation states a claim to relief, or facts showing that all

of Individual Defendants were responsible for it.  Instead, Ubiquiti relies on conclusory

3

statements, such as "the injury [was] in New York," the Individual Defendants "acted in

concert," and "Ubiquiti reasonably relied" (Dkt. 10, ¶¶ 12, 38, 82), which do not meet Rule

12(b)(2), Rule 12(b)(6), or Rule 9(b)'s requirements.  Accordingly, this Court should dismiss the

Individual Defendants from this action for lack of personal jurisdiction.  And, if this Court does

find an adequate basis for jurisdiction, Ubiquiti's claims for fraud and tortious interference

should be dismissed with prejudice.

## I.      THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

This Court does not have jurisdiction over the Individual Defendants and should

dismiss the Amended Complaint against them for four reasons:  (1) Ubiquiti's allegations rely on

Ubiquiti's residence and ultimate injury in New York, which is insufficient under New York's

long-arm statute and principles of due process; (2) even if economic harm in New York were

otherwise sufficient, Ubiquiti's information and belief pleadings cannot support the exercise of

jurisdiction over the Board Defendants; (3) Ubiquiti does not allege facts supporting the exercise

of jurisdiction through Peraso under an agency theory; and (4) Ubiquiti cannot obtain jurisdiction

over the Individual Defendants through the LDA forum selection clause, because the Individual

Defendants were never parties to that agreement.

Ubiquiti's asserted basis for jurisdiction is that the Individual Defendants were

each "a primary actor in the unlawful termination of [the LDA], as alleged below, and

committed, or aided, abetted, contributed to, or participated in tortious acts causing injury to

plaintiff in New York."  Dkt. 10, ¶ 11.  Specifically, Ubiquiti alleges that McLean advised

4

Ubiquiti that it was not required to respond to the Default Notice.  Dkt. 10, ¶ 38.  Ubiquiti pleads "on information and belief" that Board Defendants "acted in concert" with McLean, and were motivated to do so by potential financial rewards.  Dkt. 10, ¶ 38.  Ubiquiti alleges that McLean's alleged statement caused Ubiquiti to ignore the Default Notice, resulting in the termination of the LDA, which resulted in economic harm to Ubiquiti in New York.  Dkt. 10, ¶¶ 44, 45, 48.

On a Rule 12(b)(2) motion Ubiquiti bears the burden of demonstrating jurisdiction.  *Penachio*, 461 F. App'x at 5.  Prior to discovery, a plaintiff's non-conclusory, fact-specific allegations must establish a prima facie showing of jurisdiction.  *Id.*  This Court can consider materials outside the pleadings to resolve a 12(b)(2) motion.  *See Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 502 n.17 (S.D.N.Y. 2004).

The Individual Defendants are non-residents, and only specific jurisdiction is at issue.  *See Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 339-40 (S.D.N.Y. 2018) (discussing absence of general jurisdiction).  "Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process."  *Id.* at 333 (quoting *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)).  This Court must first "determine whether there is a statutory basis for exercising personal jurisdiction" and second, "whether exercise of personal jurisdiction over the defendant is consistent with due process under the Constitution."  *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 327 (S.D.N.Y. 2017) (internal quotations and citations omitted).

**A.**     **Ubiquiti's Allegations Do Not Support The
Exercise of Jurisdiction Over The Individual Defendants.**

The Individual Defendants are not residents of New York.  McLean is a resident

of Arizona.  McLean Dec., ¶ 4.  Riadh Zine and Imed Zine are residents of Toronto, Ontario.

R. Zine Dec., ¶ 5; I. Zine Dec., ¶ 5.  David Adderley is a resident of Ottawa, Ontario, as is Jim

Whitaker.  Adderley Dec., ¶ 4; Whitaker Dec., ¶ 4.  None of them have traveled to New York in

connection with Ubiquiti's claims, and Ubiquiti does not allege that they have taken any actions

in New York giving rise to its claims.  *See* McLean Dec., ¶ 7; R. Zine Dec., ¶ 8; I. Zine Dec., ¶ 8;

Adderley Dec., ¶ 7; Whitaker Dec., ¶ 7.

Ubiquiti alleges financial harm in New York, which is insufficient to establish

jurisdiction over the Individual Defendants.  And, even if Ubiquiti's allegations could support

jurisdiction over McLean, the one person who interacted with Ubiquiti, (which they do not), the

conclusory and information and belief pleadings fail to support jurisdiction over the Board

Defendants.  Dkt. 10, ¶ 38.

**1.**     **Ubiquiti's allegations do not give rise
to jurisdiction under the long-arm statute.**

Ubiquiti does not identify which section of the New York long-arm statute it

relies on.  But the language used in paragraph 11 of the Amended Complaint appears to match

CPLR § 302(a)(3), which provides for personal jurisdiction over a non-domiciliary who:

> (3) commits a tortious act without the state causing injury to
> person or property within the state, except as to a cause of action
> for defamation of character arising from the act, if he
> (i) regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have
consequences in the state and derives substantial revenue from
interstate or international commerce[.]

The long-arm statute presents two barriers to the exercise of jurisdiction here.

First, Ubiquiti has made no allegations that would satisfy either subsection (i) or (ii).  Ubiquiti

does not allege that any of the Individual Defendants regularly do business in New York, engage

in any persistent course of conduct in New York, or derive substantial revenue from interstate or

international commerce.  The absence of these allegations alone warrants dismissal.  *See M & M*

*Packaging, Inc. v. Kole*, 183 F. App'x 112, 114 (2d Cir. 2006) (affirming dismissal because no

allegations about "deriv[ing] substantial revenue from interstate or international commerce").

Second, to determine "whether there is injury in New York sufficient to warrant

§ 302(a)(3) jurisdiction [courts] must generally apply a situs-of-injury test.'" *Whitaker v. Am.*

*Telecasting Inc*., 261 F.3d 196, 209 (2d Cir. 2001) (internal quotation omitted).  "[T]he situs . . .

is the location of the original event which caused the injury, not the location where the resultant

damages are felt by the plaintiff."  *Alzal Corp. v. Emporio Motor Grp., L.L.C*., 2013 WL

3866633, at *3 (S.D.N.Y. July 26, 2013) (Swain, J.) (quoting *Whitaker*, 261 F.3d at 209

(dismissing claim of tortious interference with contract because alleged interference occurred in

Tucson)).  The long-arm statute requires that the critical events underlying Ubiquiti's tortious

interference claim took place in New York.  *See id*.  "The occurrence of financial consequences

in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for

jurisdiction under § 302(a)(3) where the underlying events took place outside New York."

*United Bank of Kuwait, PLC v. James M. Bridges, Ltd*., 766 F. Supp. 113, 116 (S.D.N.Y. 1991)

(dismissing under 12(b)(2) because injury was merely felt in New York) (citations omitted).

7

No critical or "underlying events" occurred in New York.  That is not disputed. Ubiquiti's sole allegation that connects Ubiquiti's fraud and tortious interference claims to New York is that Ubiquiti, a New York resident, felt the economic damages there.  Dkt. 10, ¶ 11.  It does not identify where or how the Individual Defendants "acted in concert," or even where McLean was when he allegedly made his representation to Ubiquiti's representatives.  Dkt. 10, ¶¶ 44, 45.  In fact, none of the Board Defendants discussed the LDA in New York, and McLean conducted the LDA negotiations over the phone—the same way he participated in the call on which Ubiquiti bases its claim.  McLean Dec., ¶ 7; R. Zine Dec., ¶¶ 7-9; I. Zine Dec., ¶¶ 7-9; Adderley Dec., ¶ 6; Whitaker Dec., ¶ 6.  Ubiquiti fails to satisfy the situs-of-injury test.  *See Alzal*, 2013 WL 3866633, at *3.  ("[T]he situs of such a nonphysical commercial injury is the place where the critical events associated with the dispute took place and not where the resultant monetary loss occurred." (internal quotation omitted)).  Therefore, the claims against the Individual Defendants must be dismissed for lack of personal jurisdiction.

2.     **The exercise of personal jurisdiction
       over the Individual Defendants
       would violate principles of due process**.

"The constitutional due process inquiry has two steps[:]  whether the defendant has sufficient minimum contacts with the forum (the 'minimum contacts') inquiry; and, if so, second, whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' (the 'reasonableness' inquiry.)"  *Lacchini*, 260 F. Supp. 3d at 328 (internal quotations and citation omitted).  Neither weighs in favor of jurisdiction here.

Ubiquiti's allegations do not satisfy the minimum contacts inquiry.  Ubiquiti alleges one contact with McLean, but that, like other negotiations between Peraso and Ubiquiti,

8

was conducted over the phone.  McLean Dec., ¶¶ 7-8.  Telephone conversations are insufficient

to give rise to jurisdiction.  *See Whitaker v. Fresno Telsat, Inc*., 87 F. Supp. 2d 227, 230

(S.D.N.Y. 1999) (citation omitted).

The "reasonableness inquiry" also weighs against exercising personal jurisdiction

over defendants.  This considers five factors, and none support the exercise of jurisdiction here:

> (1) the burden that the exercise of jurisdiction will impose on the
> defendant; (2) the interests of the forum state in adjudicating the
> case; (3) the plaintiff's interest in obtaining convenient and effective
> relief; (4) the interstate judicial system's interest in obtaining the
> most efficient resolution of the controversy; and (5) the shared
> interest of the several states in furthering fundamental substantive
> social policies.

*WorldCare Ltd. Corp. v. World Ins. Co*., 767 F. Supp. 2d 341, 361 (D. Conn. 2011) (citing *Asahi*

*Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987)).

First, none of the Individual Defendants live in New York or regularly visit New

York.  The Board Defendants—who were not directly involved in Peraso's negotiations with

Ubiquiti—do not even live in the United States.  McLean Dec., ¶¶ 4, 7; R. Zine Dec., ¶¶ 5, 7, 8;

I. Zine Dec., ¶¶ 5, 7, 8; Adderley Dec., ¶¶ 4, 6, 7; Whitaker Dec., ¶¶ 4, 6, 7.  Second, the interests

of New York in adjudicating this part of the case are limited: although Ubiquiti asks this Court to

apply New York law, the alleged decisions and actions of the Individual Defendants (assuming

they occurred, which they did not) would have occurred outside of New York, and, unlike

Peraso, they did not consent to the LDA's forum selection clause.

Nor can Ubiquiti claim that adjudicating this action here is necessary to protect its

interests in obtaining convenient and effective relief:  Ubiquiti, through its wholly-owned

9

subsidiary, recently initiated a case against Peraso and the same Individual Defendants in

Ontario, Canada, for alleged wrongdoing.  *See* Declaration of Ron Glibbery, ¶ 5 (Ex. A, ¶¶ 36,

81).  This can be judicially noticed by this Court.  Fed. R. Evid. 201(b)(2).  And the remaining

factors do not support jurisdiction given the international nature of the case.  *See Asahi*, 480 U.S.

at 115-16.  Dismissal is warranted because exercising personal jurisdiction over the Individual

Defendants would violate due process.

> **3.     Conclusory pleadings made upon
> information and belief are insufficient to
> support the exercise of personal jurisdiction.**

The Board Defendants have an additional, independent basis for dismissal under

12(b)(2): Ubiquiti pleads only that they "acted in concert" with McLean, and does so "upon

information and belief."  Dkt. 10, ¶ 44.  Under CPLR § 302, a "plaintiff must actually 'allege

facts constituting a prima facie showing of personal jurisdiction.'"  *Guo Jin v. EBI, Inc*., 2008

WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008) (quoting *PDK Labs, Inc. v. Friedlanden*, 103 F.3d

1105, 1108 (2d Cir. 1997)) ("'[I]nformation and belief' [allegations] that Defendants have

'maintained an office, a bank account, property and/or agents' in New York" fail to show

personal jurisdiction.).  "Conclusory allegations showing the presence of jurisdiction,

***particularly those stated only upon information and belief***, are insufficient to establish that the

court has personal jurisdiction over the defendant."  *Id*. (internal quotations omitted) (emphasis

added); *see also Aaacon Auto Transp., Inc. v. Barnes*, 603 F. Supp. 1347, 1351 (S.D.N.Y. 1985)

(noting that information and belief jurisdictional pleading was "denied by" the defendant).

Ubiquiti's pleadings against the Board Defendants are conclusory and are made

on information and belief.  Dkt. 10, ¶¶ 32-38.  The Board Defendants deny all knowledge of

McLean's alleged representation to Ubiquiti, let alone that they acted in concert with McLean in making that representation.  I. Zine Dec., ¶ 10; R. Zine Dec., ¶ 10; Adderley Dec., ¶ 8; Whitaker Dec., ¶ 8.  Ubiquiti's "information and belief" pleadings cannot confer jurisdiction over the Board Defendants.  This Court must dismiss the Board Defendants from this action.

**B.      Ubiquiti Cannot Obtain Personal Jurisdiction Over
        <u>The Individual Defendants Through Its Jurisdiction Over Peraso.</u>**

This Court does not have personal jurisdiction over the Individual Defendants through Peraso because they were not parties to the LDA and there is no valid agency or alter-ego theory.  Ubiquiti has not alleged facts sufficient to show that Peraso was acting as an agent or alter-ego of the Individual Defendants, or that McLean, Peraso's President, was acting as an agent of the Board Defendants.  No jurisdiction over the Individual Defendants can be derived from this Court's jurisdiction over Peraso.

**1.      The forum selection clause cannot serve
        as a basis for jurisdiction over the Individual Defendants**.

This Court's jurisdiction over Peraso arises from the LDA's forum selection clause.  Dkt. 10, ¶ 11.  The forum selection clause in the LDA does not provide this Court with jurisdiction over the Individual Defendants, none of whom are parties to the LDA.  A non-party to a contract is subject to that contract's forum selection clause only if the non-party is "closely-related" to the contracting parties or the contract dispute.  *Dragon State Int'l Ltd. v. Keyuan Petrochemicals, Inc.*, 2016 WL 439022, at *3 (S.D.N.Y. Feb. 3, 2016) (citation omitted).

This Court has repeatedly rejected arguments that individual officers or directors of a corporation are necessarily subject to forum selection clauses to which the corporation is a

party.  *See, e.g.*, *id.* (holding that a forum selection clause was not binding on the CFO of a

contracting company in the absence of allegations that she was aware of, benefited from, or

could have foreseen being bound by the clause); *Casville Invs., Ltd. v. Kates*, 2013 WL 3465816,

at *6 (S.D.N.Y. July 8, 2013) (holding that a forum selection clause did not bind non-signatory

corporate officers and directors).  "'[C]losely related' in this sense is a fairly strict standard," and

has been articulated as meaning that a party is "closely related to the dispute such that it becomes

foreseeable that it will be bound."  *Miller v. Mercuria Energy Trading, Inc*., 291 F. Supp. 3d

509, 523 (S.D.N.Y. 2018) (internal quotations and citations omitted), *aff'd*, 774 F. App'x 714 (2d

Cir. 2019) (summary order).  As a result, in "[t]he vast majority of cases that have found a

nonsignatory bound by a forum selection clause ... the non-signatory had a far more active role in

the transaction."  *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 259 (E.D.N.Y. 2013).

        Ubiquiti has not alleged that any of the Individual Defendants were parties to the

LDA between Peraso and Ubiquiti, or that the Board Defendants were involved in the

negotiation or execution of the LDA.  This is because they were not.  McLean Dec., ¶¶ 6, 7; R.

Zine Dec., ¶ 7; Imed Zine Dec., ¶ 7; Adderley Dec., ¶ 6; Whitaker Dec., ¶ 6.  Ubiquiti's only

factual allegations are that McLean made a misrepresentation about the LDA, and the Board

Defendants acted in concert with him, and the latter is both conclusory and made on information

and belief.  *See* Point I(A)(3), *supra*; Dkt. 10, ¶¶ 38, 45.  Nor does Ubiquiti sufficiently allege

that the Board Defendants had direct knowledge of the forum selection clause in the LDA—

except through participation "in the corporate governance of Peraso."  Dkt. 10, ¶¶ 68-70.  Mere

participation in corporate governance was not sufficient under *Dragon State*.  2016 WL 439022,

at *3.  Therefore, this Court may not exercise personal jurisdiction through the forum selection clause over any of the Individual Defendants.

### 2.    The Amended Complaint does not allege facts supporting jurisdiction over the Board Defendants under an agency theory.

The Board Defendants are not subject to jurisdiction through the actions of Peraso or McLean.  There are no specific factual allegations showing that Peraso was acting as an agent of the Board Defendants.  "[I]ndividual officers are not subject to personal jurisdiction in New York merely because jurisdiction can be obtained over the corporation."  *AMPA Ltd. v. Kentfield Capital LLC*, 2001 WL 204198, at *2 (S.D.N.Y. Mar. 1, 2001) (citations omitted).  Instead, for a corporation or person to be an "agent" within the meaning of § 302, the agent's actions must have been taken "with the knowledge and consent of the [principal] for his benefit" and the principal must have "exercised control" over the agent's actions.  *Id*. at *3 (internal quotation omitted).  These requirements must be supported by specific factual allegations.  *See Singer v. Bell*, 599 F. Supp. 350, 352-53 (S.D.N.Y. 1984) (holding that conjecture about a conspiracy between in-state and foreign defendants did not establish jurisdiction over foreign defendants).  "[C]ontrol cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation."  *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 328 (S.D.N.Y. 2015) (internal quotation omitted); *see also Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 253 n.5 (S.D.N.Y. 2003).  Nor are "broadly worded and vague allegations about a defendant's participation in the specific matter at hand" sufficient for personal jurisdiction.  *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 648 (S.D.N.Y. 2008).  Instead, a plaintiff must show that the officer had a primary role in the transaction at issue.  *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998).

13

*Karabu* is especially instructive here, and Ubiquiti's allegations fail for the same reason. The plaintiff in *Karabu* sued senior officers at a company who did "not live in New York, work in New York, or have personal dealings in New York" instead of the company itself. *Id*. at 320. This Court found that there were not sufficient allegations to show that the individual officers "exercised some control" over the alleged actions committed in New York by the airline company. *Id*. at 324. The plaintiff generally alleged that the officers directed the company to punish travel agencies, but was "completely devoid of any factual specificity indicating how each of the [individual officers] participated in the allegedly tortious conduct or what role they each played." *Id*. at 325. As in *Karabu*, Ubiquiti pleads on information and belief that the Board Defendants were "acting in concert" with McLean "to cause Peraso to issue the Notice of Default" and "terminate the [LDA]." Dkt. 10, ¶¶ 38, 71, 72. These are not specific facts and cannot serve as a basis for jurisdiction. Nor can Ubiquiti rely on the Individual Defendants' "participation in the corporate governance of Peraso." Dkt. 10, ¶¶ 68-70; *see Jonas*, 116 F. Supp. 3d at 328. Ubiquiti has not alleged that the Board Defendants had the requisite level of knowledge, consent, or control over either McLean or Peraso.

This Court lacks personal jurisdiction over the Board Defendants under New York's long-arm statute, and Ubiquiti's claims against them should be dismissed.

## II.      UBIQUITI'S CLAIMS SOUNDING IN FRAUD MUST BE DISMISSED

Even if this Court has jurisdiction over the Individual Defendants (which it does not), Ubiquiti's claims sounding in fraud fail for four reasons and must be dismissed because Ubiquiti: (1) fails to allege facts showing reasonable reliance, as required for fraud; (2) does not

14

properly plead fraudulent intent; (3) engages in impermissible group pleading—made upon

information and belief—as to the Board Defendants; and (4) fails to allege facts showing that the

Individual Defendants were third parties, as required for tortious interference.

Ubiquiti alleges the existence of one false representation: on December 11, 2019,

McLean advised Ubiquiti that "the Default Notice did not require a response."  Dkt. 10, ¶¶ 44,

79.  Ubiquiti alleges that this was false because "[t]he License Agreement provides that a party

receiving a notice of default has 30 days to respond to the noticed default."  Dkt. 10, ¶ 43.

Ubiquiti pleads upon information and belief that the Individual Defendants acted in concert, and

were motivated by personal enrichment from a sale of Peraso that would be made more likely by

termination of the LDA, allegedly facilitated by McLean's representation.  Dkt. 10, ¶¶ 38, 77.

To state a claim for common-law fraud under New York law, a plaintiff must

allege facts showing that: (1) the defendant made a material false representation; (2) with the

intent to commit fraud; (3) the plaintiff reasonably relied upon that false representation; and

(4) suffered damage because of its reliance.  *Nasik Breeding & Research Farm Ltd. v. Merck &

Co., Inc.*, 165 F. Supp. 2d 514, 528 (S.D.N.Y. 2001).  Under Federal Rule of Civil Procedure

9(b), fraud—and claims sounding in fraud—must be plead with particularity.  A complaint must

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal citation omitted).

Rule 9(b) also imposes two other relevant pleading limitations.  First, allegations

of fraud cannot be made on "information and belief" unless the facts are peculiarly within the

15

opposing party's knowledge, and the pleader must also allege facts upon which that belief is founded. *See In re AlphaStar Ins. Grp. Ltd.*, 383 B.R. 231, 257 (Bankr. S.D.N.Y. 2008) (internal citations omitted). Second, group pleading is "generally forbidden," and a "claim may not rely upon blanket references to acts … by all the defendants." *Id*. at 257-58 (internal citation and quotation omitted). This serves "to protect a defendant's reputation from improvident charges of wrongdoing, discourage strike suits, and provide fair notice of the basis for such claims." *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 245 (S.D.N.Y. 1997). Intent can be averred generally, but this is not "a license to base claims of fraud on speculation and conclusory allegations . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Duran v. Henkel of Am., Inc*., --- F. Supp. 3d ---, 2020 WL 1503456, at *9 (S.D.N.Y. Mar. 30, 2020) (quoting *Lerner v. Fleet Bank, N.A*., 459 F.3d 273, 290 (2d Cir. 2006)).

A.    <u>**Ubiquiti Makes No Allegation About Reasonable Reliance**</u>

Ubiquiti does not allege any facts supporting its reasonable reliance. Ubiquiti's sole allegation is the conclusory assertion that it "reasonably relied" on McLean's alleged misrepresentation. Dkt. 10, ¶ 82. This Court may appropriately test reasonableness on this motion, and the other factual allegations in the Amended Complaint show that Ubiquiti's alleged reliance could not possibly have been reasonable.

"In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc*., 343 F.3d 189, 195 (2d Cir. 2003). Under New York Law, "if the facts represented are not matters peculiarly within the representor's

16

knowledge, and the other party has means available to him of knowing by the exercise of

ordinary intelligence the truth . . . he must make use of those means." *Wash. Capital Ventures,*

*LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 366 (S.D.N.Y. 2005) (quoting *Dunkin' Donuts v.*

*Liberatore*, 138 A.D.2d 559 (2d Dep't 1988)). "Thus, a party may not justifiably rely on a

representation that is specifically disclaimed in a written agreement." *Passelaigue v. Getty*

*Images (US), Inc.*, 2018 WL 1156011, at *3 (S.D.N.Y. Mar. 1, 2018) (dismissing claims for

fraud and fraudulent inducement). "Where sophisticated businessmen engaged in major

transactions enjoy access to critical information but fail to take advantage of that access, New

York courts are particularly disinclined to entertain claims of justifiable reliance." *Russell Pub.*

*Grp., Ltd. v. Brown Printing Co.*, 2014 WL 1329144, at *3 (S.D.N.Y. Apr. 3, 2014).

       Ubiquiti is a sophisticated business entity whose relationship with Peraso was

governed by the LDA.  Ubiquiti alleges that the termination of the LDA caused "no less than

$5,000,000" in damages.  Dkt. 10, ¶¶ 20, 83.  Ubiquiti admits that the LDA specifically

addressed the party's obligations on receiving a "Notice of Default."  Dkt. 10, ¶ 43.  Ubiquiti

acknowledges that it received the Default Notice.  Dkt 10, ¶ 39.  Ubiquiti could have discovered

the truth regarding their obligations through the exercise of ordinary intelligence and an

examination of the LDA.  Reliance on McLean's alleged representation is not close to

reasonable, and Ubiquiti's fraud claim therefore fails as a matter of law.

## B.    Ubiquiti Has Not Alleged Facts Supporting Scienter

       The second, independent, reason to dismiss the fraud allegations is Ubiquiti has

not alleged facts supporting a "strong inference" of fraudulent intent.  "For an inference of

scienter to be strong, 'a reasonable person [must] deem [it] cogent and at least as compelling as

any opposing inference one could draw from the facts alleged.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007)) (emphasis and alterations in *ATSI*).  There are two ways to establish scienter.  A plaintiff can either identify "strong circumstantial evidence of conscious misbehavior or recklessness," or it can allege facts showing "motive and opportunity" to commit fraud.  *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (internal quotations omitted).

Ubiquiti only attempts to show "motive and opportunity" to commit fraud through a profit motivation.  Ubiquiti pleads, upon information and belief, that the Individual Defendants pursued the termination of the LDA in order to facilitate the sale of Peraso to a third-party.  Dkt. 10, ¶¶ 34, 37, 38.  Ubiquiti further pleads, also upon information and belief, that this transaction would have inured to the benefit of the preferred shareholders at the expense of Peraso and non-preferred shareholders.  Dkt. 10, ¶¶ 33, 35, 38.  Ubiquiti also pleads, again upon information and belief, that the Individual Defendants would earn a "substantial personal financial reward through their interests in the preferred shares of Peraso and in the Venture Funds if Peraso were to be acquired by the" third-party.  Dkt. 10, ¶ 36.  Ubiquiti relies on its allegations that McLean is a preferred shareholder and that the Board Defendants, although not preferred shareholders individually, are involved in "Venture Funds" that were.  Dkt. 10, ¶¶ 4, 5, 7-9.

Ubiquiti's motive pleadings appear to actually sound in a shareholder theory that directors put their own interests ahead of the company's.  That action could be brought on behalf of Ubiquiti's wholly-owned Canadian subsidiary.  *See* Glibbery Dec., ¶ 5 (Ex. A, ¶ 66).  Ubiquiti filed a shareholder suit in Ontario, Canada related to other conduct that it claims was self-serving and improper by these same Individual Defendants.  *See* Glibbery Dec., ¶ 5 (Ex. A at ¶ 36).

18

In addition to whether these claims are even brought by the right party in the proper forum, there are two other problems with this approach to scienter.  First, Ubiquiti's theory is too speculative and generalized to establish scienter.  Second, McLean is not and never was a preferred shareholder, and this is a fact that Ubiquiti was (or should have been) aware of but alleged anyway.  Ubiquiti's allegation about profit accruing to preferred shareholders makes no sense and most certainly does not apply to McLean.

### 1. Ubiquiti's theory of profit is too speculative and generalized to establish scienter.

Ubiquiti's scienter allegations fail because they involve an attenuated chain of events that would apply to every preferred shareholder, not just those who have representatives on Peraso's Board.  Such broad undifferentiated allegations are too generalized and speculative to serve as a basis for scienter.  "Sufficient motive allegations 'entail concrete benefits that could be realized by one or more of the false statements … alleged.'"  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2001)).  "[S]peculative, conditional benefits" are not concrete and do not meet the requirements "for an inference of motive under 9(b)."  *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 446 (S.D.N.Y. 2000) (rejecting as speculative allegations that one defendant could have benefited from an "unexecuted agreement under which he would have received options to purchase shares").  The Second Circuit has held that generalized allegations of economic self-interest are also insufficient.  *See Kalnit*, 264 F.3d at 139-40 (explaining that motives common to other officers or corporations are too generalized to establish fraudulent intent).  In reaching this conclusion, it approvingly cited *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 622 (4th Cir. 1999), for the holding that "plaintiffs' allegations that director sought to depress the stock price ***to assure***

***the success of a merger*** to retain a position on the board and obtain a higher price for his stock did not constitute an adequate motive." *Id*. at 140 (emphasis added).

Ubiquiti's allegations are too speculative and generalized to establish scienter. At most, Ubiquiti has pleaded that the termination of the LDA would "increase the likelihood" of a transaction from which the Individual Defendants would benefit, not that it would result in one. Dkt. 10, ¶ 38. This alleged benefit is speculative, not "concrete" as required to establish motive. *Holographics*, 93 F. Supp. 2d at 446. Even if the benefit to the Individual Defendants were sufficiently concrete, the same benefit would accrue to all holders of preferred shares—including Ubiquiti's wholly-owned Canadian subsidiary—and the same argument could be made about *any* company seeking a purchaser. This is too generalized to establish scienter. Moreover, both parts of Ubiquiti's theory—that termination of the LDA would increase the likelihood of the transaction, and that it would preferentially benefit preferred shareholders—rely on information and belief pleadings, not on factual allegations. Dkt. 10, ¶¶ 33-38; *see Bay Harbour Mgmt. LLC v. Carothers*, 282 F. App'x 71, 76 (2d Cir. 2008).

### 2.     McLean is not a preferred shareholder.

Ubiquiti alleges that McLean is or was a preferred shareholder. Dkt. 10, ¶ 4. This is not true. Ubiquiti identifies and relies on the "Subscription Agreement" and other "Charter Documents of Peraso" in the relevant allegations, and these documents may be considered by this Court. Dkt. 10, ¶¶ 19, 21, 22; *see Jasper & Black, LLC v. Carolina Pad Co., LLC*, 2012 WL 413869, at *5 (S.D.N.Y. Feb. 9, 2012) (Swain, J.) (considering emails that referenced in the complaint on a motion to dismiss). And "if a document relied on in the complaint contradicts allegations in the complaint, [then] the document . . . control[s]." *Poindexter v. EMI Record*

20

*Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (Swain, J.) (dismissal granted when agreement's text contradicted the plaintiff's allegations about that agreement).

These documents make it clear that, unlike Ubiquiti's subsidiary, McLean is not and *never* was a preferred shareholder.  *See* Glibbery Dec., ¶¶ 4, 5.  Peraso set aside common shares for its officers and directors, so McLean only held an option to purchase common shares.[2] *See* Glibbery Dec., ¶ 4.  According to Ubiquiti, this means that he would not have benefited from the third-party sale.  Dkt. 10, ¶ 35.

Thus, the only motive that Ubiquiti has alleged to establish McLean's fraudulent intent is flatly contradicted (and should not really be in dispute).  The claims against the Board Defendants also fail because McLean is the only Individual Defendant who allegedly made a fraudulent representation.  McLean did not have the requisite fraudulent intent, and it thus follows that the Board Defendants cannot have committed fraud "in concert" with him.

## C.    Ubiquiti Does Not Allege Facts Supporting The Board Defendants' Role In The Purported Fraud

Ubiquiti's Amended Complaint contains no meaningful allegations regarding the Board Defendants, does not identify any specific statements or acts by them, and must be dismissed as against them.  *See PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 493 (S.D.N.Y. 2017).  Ubiquiti attempts to address this deficit by pleading "[u]pon information and belief" that the individual defendants were "acting in concert with McLean."  Dkt. 10, ¶ 77.  This Court has

---

[2]    Counsel for Peraso and Ubiquiti conferred on May 6, 2020.  At Ubiquiti's request, Peraso has not submitted the underlying documents.  If necessary to resolve this motion, Peraso can provide the LDA and Subscription Agreement to this Court for *in camera* review.

repeatedly dismissed fraud claims against defendants whose involvement relies on conclusory allegations. *See PetEdge*, 234 at 493-94 (collecting cases). In *PetEdge*, this Court rejected the plaintiff's conclusory allegations about defendants acting at another's "direction" and "as part of [his] scheme." *Id*. at 493. In *de Atucha v. Hunt*, 128 F.R.D. 187, 189-90 (S.D.N.Y. 1989), this Court addressed a nearly identical situation: a plaintiff pleaded on "information and belief" that the "defendants . . . acted in concert" to manipulate the silver market. The *de Atucha* plaintiff did identify specific meetings that the defendants had to discuss the silver market, but this Court still held that the plaintiff failed to state a factual basis for his "in concert" belief. *Id*. at 190. Ubiquiti does not come close to the defective pleading that this Court dismissed in *de Atucha*.

As a general rule, Rule 9(b) pleadings cannot be based on information and belief. *Morin v. Trupin*, 747 F. Supp. 1051, 1068 (S.D.N.Y. 1990) ("[P]laintiffs' assertions are based upon 'information and belief,' without disclosing the source of those beliefs. . . . such bare allegations are insufficient to withstand a motion to dismiss."). Although this "rule is relaxed as to matters peculiarly within the adverse parties' knowledge"—such as the inner workings "of a group of defendants who have acted in concert"—the allegations "**must** then be accompanied by a statement of the facts upon which the belief is founded." *Competitive Assocs., Inc. v. Fire Fly Enter., Inc*., 59 F.R.D. 336, 338 (S.D.N.Y. 1972) (emphasis added) (quoting *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972)).

Ubiquiti pleaded on information and belief that the Board Defendants acted in concert to cause Ubiquiti to fail to respond to the Default Notice. Dkt. 10, ¶ 38. But Ubiquiti alleges no facts supporting their involvement, let alone that they acted in concert or how. The allegations made regarding the third-party purchaser are also made upon information and belief,

as are the allegations regarding the financial interests of the Individual Defendants.  Dkt. 10,

¶¶ 9, 18, 32-38, 45, 77.  Ubiquiti cannot buttress its information and belief pleadings with more

information and belief pleadings, and its failure to allege facts sufficient to support its "beliefs"

warrants dismissal.  *See Feasby v. Industri-Matematik Int'l Corp.*, 2003 WL 22976327, at *4

(S.D.N.Y. Dec. 19, 2003) (Swain, J.) (dismissing fraud claims pleaded on information and belief

without supporting factual allegations).

### D.  Ubiquiti's Claim For Tortious Interference With Contract Must Be Dismissed

Ubiquiti's tortious interference with contract claim must be dismissed because it

is not supported by factual allegations.  "Under New York law, the elements of a tortious

interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of

the contract; (c) that the third party intentionally and improperly procured the breach of the

contract; and (d) that the breach resulted in damage to the plaintiff."  *Canelle v. Russian Tea

Room Realty LLC.*, 2002 WL 287750, at *3 (S.D.N.Y. Feb. 27, 2002).

Ubiquiti alleges that it had a valid contract with Peraso (Dkt. 10, ¶ 68), the

Individual Defendants were aware of the contract as members of Peraso's Board of Directors

(Dkt. 10, ¶ 68), the Individual Defendants caused Peraso to issue the Default Notice and

terminate the LDA (Dkt. 10, ¶¶ 71-74), and the Individual Defendants were motivated by

personal gain via preferred shares in Peraso (Dkt. 10, ¶ 74).

Because Ubiquiti's tortious interference claim is premised on the Individual

Defendants' alleged fraudulent actions, the heightened pleading standards of Rule 9(b) apply.

*See In re Gen. Media, Inc.*, 368 B.R. 334, 344 (Bankr. S.D.N.Y. 2007) (citing *Rombach*, 355

23

F.3d at 171).  When alleging tortious interference as Ubiquiti has here, the plaintiff must show

that the officers or directors were acting "wholly outside the scope of their authority for purely

personal gain."  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 406

(S.D.N.Y. 2009) (applying Rule 9(b) to tortious interference claim).  The "personal gain"

requirement is a "narrow exception" to the rule against bringing tortious interference claims

against employees of a party to a contract, and requires allegations that the acts "were performed

with malice and were calculated to impair the plaintiff's business for the personal profit of the

[officer]."  *Id*. at 407-08 (quoting *Joan Hansen & Co., Inc. v. Everlast World's Boxing

Headquarters Corp*., 296 A.D. 2d 103, 109-10 (1st Dep't 2002)).  And "[w]here the defendants

have an economic interest in the contract . . . [t]he plaintiff must also adequately allege that the

defendant[s] either acted maliciously, fraudulently, or illegally."  *Id*. at 406 (citing *White Plains

Coat & Apron Co., Inc. v. Cintas Corp*., 8 N.Y.3d 422, 426 (2007) for the proposition that the

economic interest defense is available to shareholders of a breaching company)).

Ubiquiti's allegations fail.  As Ubiquiti's Amended Complaint makes clear, the

Individual Defendants were officers and directors of Peraso, the party to the contract with

Ubiquiti.  And Ubiquiti has alleged that the Individual Defendants are either Peraso shareholders

or had personal interests in Peraso shareholders.  Dkt. 10, ¶¶ 4-9.  Thus, Ubiquiti was required to

allege facts showing that the Individual Defendants acted outside the scope of their employment

for personal gain, and they did so maliciously, fraudulently, or illegally.  But Ubiquiti does not

allege *facts* supporting its claim, and only merely makes the conclusory assertion that the

Individual Defendants were acting for personal gain.  Not only is this insufficient to show

malice, it is unquestionably incorrect as to McLean and impermissibly made upon information and belief as to the Board Defendants.  *See* Point II(B), *supra*.

<u>**Conclusion**</u>

The Individual Defendants respectfully submit that this Court should grant their motion under Rule 12(b)(2) and enter an order dismissing them from this case for lack of jurisdiction.  Alternatively, the Individual Defendants submit that this Court should grant their motion under Rule 12(b)(6) and Rule 9(b) and enter an order dismissing the claims against them with prejudice.

Dated:  May 7, 2020

HODGSON RUSS LLP

By: __s/Jodyann Galvin____
      Jodyann Galvin
      David Short (Admitted in VA)
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
716.856.4000
*jgalvin@hodgsonruss.com*
*Attorneys for William A. McLean, William James*
*Whitaker, David M. Adderley, Imed Zine,*
*and Riadh Zine*

25