UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBIQUITI INC., <br><br> Plaintiff, <br><br> -against- <br><br> PERASO TECHNOLOGIES INC., WILLIAM A. McLEAN, WILLIAM JAMES WHITAKER, SHAWN ABBOTT, DAVID ADDERLEY, IMED ZINE and RIADH ZINE, <br><br> Defendants. | 1:20-CV-1312 <br><br> SECOND AMENDED COMPLAINT |

UBIQUITI INC., for its Second Amended Complaint against defendants PERASO TECHNOLOGIES INC., WILLIAM A. McLEAN, WILLIAM JAMES WHITAKER, SHAWN ABBOTT, DAVID ADDERLEY, IMED ZINE and RIADH ZINE, alleges as follows:

1. This is an action for a declaratory judgment and monetary damages arising from the breach of a license and development agreement and the conversion of exclusive rights under that agreement, and for monetary damages arising from tortious interference with a contract and fraud.

THE PARTIES

2. Plaintiff Ubiquiti Inc. ("Ubiquiti") is a corporation incorporated under the laws of Delaware, having a place of business at 685 Third Ave, 27th Floor, New York, NY 10017.

3. Defendant Peraso Technologies Inc. ("Peraso") is a corporation incorporated under the laws of the Province of Ontario, having a place of business at 144 Front Street West, Suite 685, Toronto, Ontario, M5J 2L7, Canada.

4. Defendant William A. McLean is an individual Canadian citizen residing in Arizona. At all times relevant to the allegations in this Second Amended Complaint, Mr. McLean was the President, CEO and Chairman of the Board of Directors of Peraso.

5. Defendant William James Whitaker is an individual residing in Toronto, Ontario, Canada. At all times relevant to the allegations in this Second Amended Complaint, Mr. Whitaker was a member of the Board of Directors of Peraso. Mr. Whitaker was also the Managing Partner of VL Advisors, Inc., which was the Manager and Investment Advisor of Venturelink Innovation Fund Inc. ("Venturelink"). Venturelink is a preferred shareholder of Peraso.

6. Defendant Shawn Abbott is an individual residing in Toronto, Ontario, Canada. At all times relevant to the allegations in this Second Amended Complaint, Mr. Abbott was a member of the Board of Directors of Peraso. Mr. Abbott was also the Vice President of iNovia Capital, Inc., which was the general partner of iNovia Management II Limited Partnership, which was the general partner of iNovia Investment Fund II, Limited Partnership, iNovia Investment Fund II-A, Limited Partnership, iNovia Investment Fund II-B, Limited Partnership, iNovia Peraso SPV, Limited Partnership, and iNovia Peraso SPV (International), Limited Partnership (collectively "iNovia"). iNovia is a preferred shareholder of Peraso.

7. Defendant David Adderley is an individual residing in Toronto, Ontario, Canada. At all times relevant to the allegations in this Second Amended Complaint, Mr. Adderley was a member of the Board of Directors of Peraso. Mr. Adderley was also the President of Celtic-GCI SPV I GP Inc., which is the general partner of Celtic GCI SPV LP I, the President of Celtic House General Partner (Fund III) (U.S.) Inc., which is the

general partner of Celtic House Venture Partners Fund III (U.S.) L.P., the President of Celtic House SPV II LP, which is the general partner of Celtic House SPV II LP, and a partner in Celtic House General Partner (Fund III) Inc., which is the general partner of Celtic House Venture Partners Fund III L.P. (collectively "Celtic"). Celtic is a preferred shareholder of Peraso.

8. Defendant Imed Zine is an individual residing in Toronto, Ontario, Canada. At all times relevant to the allegations in this Second Amended Complaint, Mr. Imed Zine was a member of the Board of Directors of Peraso. Mr. Imed Zine is a principal of Roadmap Capital, Inc., which is the manager of Roadmap Capital General Partner LTD, which is the general partner of Roadmap Innovation Fund I, Roadmap Peraso LP (US and Offshore), Roadmap Peraso LP II, Roadmap Peraso LP II (US and Offshore), Roman Innovation Fund II, and Roadmap Innovation Fund (US and Offshore) I (collectively "Roadmap"). Roadmap is a preferred shareholder of Peraso.

9. Defendant Riadh Zine is an individual residing in Toronto, Ontario, Canada. At all times relevant to the allegations in this Second Amended Complaint, Mr. Riadh Zine was a member of the Board of Directors of Peraso. Upon information and belief, Mr. Riadh Zine is a principal of Roadmap.

JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction under 28 U.S.C. § 1332, because there is diversity of citizenship and the amount in controversy exceeds $75,000. There is diversity of citizenship because Ubiquiti is a citizen of Delaware and New York, defendant William A. McLean is a resident of Arizona and a citizen of Canada, and each of the other defendants is a citizen of Canada.

11. This Court has personal jurisdiction over the Defendant Peraso because, *inter alia,* Peraso has agreed to submit to the personal jurisdiction of courts located in New York, New York. This Court has personal jurisdiction over Defendants McLean, Whitaker, Abbott, Adderley, Imed Zine and Riadh Zine because each individual was a primary actor in the unlawful termination of a license agreement, as alleged below, and committed, or aided, abetted, contributed to, or participated in, tortious acts causing injury to Plaintiff in New York and because, with respect to the claims asserted herein, each individual defendant is subject to the forum selection clause in the License Agreement as described herein.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendant Peraso has agreed to submit to the personal jurisdiction of courts located in New York, New York, to adjudicate or determine any suit, action or proceeding arising out of or in connection with the license agreement that is the subject of this dispute and because, with respect to the claims asserted herein, each individual defendant is subject to the forum selection clause in the License Agreement as described herein.

13. The Court has the authority to hear causes of action seeking a declaratory judgment pursuant to 28 U.S.C.A. §§ 2201, 2202.

### FACTS COMMON TO ALL CAUSES OF ACTION

14. Plaintiff Ubiquiti is a publicly traded company (NYSE: UI) that develops and markets professional networking hardware and software that is used to create networking infrastructure in over 200 countries and territories around the world.

15. Defendant Peraso is a venture funded private semiconductor company specializing in the development of integrated circuits for the 60 GHz wireless marketplace.

16. Defendant McLean was a member of the board of directors of Peraso prior to December 2018 and continuing to February 2020.

17. Each of defendants Whitaker, Abbott, Adderly, Imed Zine and Riadh Zine (collectively the "Individual Defendants") were members of the board of directors of Peraso prior to December 2018 and continuing to February 2020.

18. VentureLink, iNovia, Celtic and Roadmap (collectively the "Venture Funds") were venture funds that invested in Peraso prior to December 21, 2018 and continuing to this day.

19. Upon information and belief, Whitaker, Abbott, Adderly, Imed Zine and Riadh Zine, as partners, owners, investors and/or employees of one of the Venture Funds, had direct financial interests in their Venture Fund's investment in Peraso.

20. Pursuant to the Charter Documents of Peraso as amended, each of the Venture Funds was entitled to receive preferred dividends, liquidation priorities, and other financial considerations greater than those to which other, common share, investors in Peraso were entitled.

21. On December 21, 2018, Ubiquiti and Peraso entered into a License and Development Agreement (the "License Agreement"). McLean signed the License Agreement as President and CEO of Peraso.

22. Simultaneously with the License Agreement, and in consideration for the obligations undertaken by Peraso in the License Agreement, a Ubiquiti subsidiary and Peraso also entered into a Class C Series 1 Convertible Preferred Share Subscription Agreement (the "Subscription Agreement"), whereby the Ubiquiti subsidiary agreed to

make certain equity investments in Peraso if and when certain development "milestones" were achieved by Peraso.

23. To induce Ubiquiti, through its subsidiary, to enter into the Subscription Agreement and make equity investments into Peraso, Peraso and the Venture Funds, by and through the Individual Defendants, agreed to amend and restate the Peraso Shareholders Agreement and to cause Peraso to enter into the License Agreement and collateral documents.

24. The amended and restated Shareholders Agreement gave the Ubiquiti subsidiary the right to have an observer attend all meetings of the Peraso board and any committees thereof and the right to receive all written information provided to the board or any committee thereof concurrently with the provision of such information to the board or the applicable committee.

25. The amended and restated Shareholders Agreement also provided that any person or entity obtaining a controlling interest in Peraso was required to assume Peraso's obligations and rights under the License Agreement.

26. The Venture Funds expressly consented to the Subscription Agreement and collateral documents, including the License Agreement, by entering into the Shareholders Agreement, which was executed by Whitaker, Abbott, Adderly, and Imed Zine.

27. Pursuant to the License Agreement, Peraso agreed to develop for Ubiquiti certain chipsets.

28. The License Agreement obligated Peraso to complete the development of the chipsets and to "demonstrate to the reasonable satisfaction of" Ubiquiti that each of

three defined development "Milestones" had been completed by agreed to completion dates for each Milestone.

29. The first Milestone had been completed at the time that the parties entered into the License Agreement.

30. Peraso was required to give Ubiquiti written notice of when it believed that it had achieved each of the second and third Milestones (respectively, the "Second Tranche Development Milestones" and the "Third Tranche Development Milestones").

31. The License Agreement further provided that "[within 30 days of receipt of each such notice, Ubiquiti would "review and conduct such testing as it reasonably considers necessary in order to determine whether the Acceptance Criteria in respect of the applicable Milestone have been satisfied" and would provide Peraso with "written notice of rejection or acceptance of whether Peraso has demonstrated the satisfaction of the Acceptance Criteria" for the applicable Milestone.

32. The deliverables provided to Ubiquiti by Peraso on or before October 31, 2019, whether considered individually or in the aggregate, were not adequate to demonstrate to the reasonable satisfaction of Ubiquiti that Peraso had achieved the Third Tranche Development Milestones.

33. Between October 31, 2019, and December 11, 2019, Ubiquiti repeatedly provided Peraso with notice that the materials provided by Peraso on October 31, 2019, did not demonstrate to the reasonable satisfaction of Ubiquiti that Peraso had achieved the Third Tranche Development Milestones.

34. Between October 31, 2019, and December 11, 2019, Peraso repeatedly acknowledged the shortcomings identified by Ubiquiti in the materials provided by Peraso on October 31, 2019, and repeatedly attempted to rectify those shortcomings.

35. By October 31, 2019, a Ubiquiti subsidiary had invested over $5 million in Peraso and in the development of the chipsets which, pursuant to the License Agreement, were to be made available exclusively to Ubiquiti.

36. Upon information and belief, in spite of the substantial investment made in Peraso by a Ubiquiti subsidiary, by the Fall of 2019 Peraso's financial condition had deteriorated to the point that it was having difficulty making payroll.

37. Upon information and belief, by the Fall of 2019 Peraso had accumulated a large sum of accrued and unpaid dividends owed to the Venture Funds.

38. Upon information and belief, in or about November 2019, Peraso or its board of directors entered into a relationship with a broker to seek a sale of Peraso to a third party and the broker was unable to generate any interest in the purchase of Peraso other than a potential sale of Peraso to a US-based hardware company.

39. Upon information and belief, the terms of the potential sale of Peraso to a US-based hardware company would generate sufficient proceeds to provide compensation to the Venture Funds for some or all of the accrued and unpaid dividends owed to the Venture Funds.

40. In December 2019 McLean held options to purchase millions of common shares in Peraso vesting over a four year period beginning in February 2019. If Peraso were to be acquired by the U.S.-based hardware company, half of McLean's options

would immediately vest and be fully exercisable and the other half would vest in equal monthly installments over a one-year period.

41. Upon information and belief, each of Whitaker, Abbott, Adderley, Imed Zine, and Riadh Zine, through their interests in the preferred shares of Peraso and in the Venture Funds, would earn a substantial personal financial reward if Peraso were to be acquired by the U.S.-based hardware company.

42. Upon information and belief, McLean and the Individual Defendants learned that the U.S.-based hardware company was not interested in purchasing Peraso so long as Ubiquiti had the exclusive rights to certain chips being developed by Peraso as provided in the License Agreement.

43. On or before November 1, 2019, Peraso stopped providing Ubiquiti's subsidiary with notice of board and committee meetings and stopped providing the written information that was provided to the board and committees of the board.

44. Upon information and belief, McLean, Whitaker, Abbott, Adderly, Imed Zine and Riadh Zine, acting in concert, decided to terminate the License Agreement in order to increase the likelihood that Peraso would be acquired by the U.S.-based hardware company, even though Ubiquiti was not in breach of its obligations under the License Agreement, there was no legal basis for terminating the License Agreement, and terminating the License Agreement was not in the best interests of Peraso and its shareholders other than McLean and the Venture Funds.

45. On December 11, 2019, counsel acting on behalf of Peraso gave notice to Ubiquiti that Ubiquiti was allegedly in default of a material obligation under the License Agreement (the "Default Notice"). Specifically, the Default Notice claimed that Peraso

had given Ubiquiti written notice of its achievement of the Third Tranche Development Milestones on October 31, 2019 and that Ubiquiti failed to give Peraso written notice of rejection or acceptance of Peraso's alleged achievement of the Third Tranche Development Milestones within 30 days of October 31, 2019.

46. The Default Notice does not identify the document or documents that allegedly constitute the October 31, 2019, notice to Ubiquiti that Peraso had achieved the Third Tranche Development Milestones.

47. As of December 11, 2019, Peraso had not provided Ubiquiti with notice sufficient to "demonstrate to the reasonable satisfaction of" Ubiquiti that Peraso had achieved the Third Tranche Development Milestones by or before October 31, 2019, the deadline for such achievement set forth in the License Agreement.

48. As of December 11, 2019, Ubiquiti was not in default of its obligations under the License Agreement.

49. The License Agreement provides that a party receiving a notice of default has 30 days to respond to the noticed default.

50. On December 11, 2019, shortly before Peraso's counsel issued the Notice of Default and in furtherance of the plan to wrongfully terminate the License Agreement, McLean advised Ubiquiti that Peraso would issue the Default Notice but the Default Notice did not require a response because the Third Tranche Development Milestones had not been achieved prior to October 31, 2019.  Peraso's counsel issued the Default Notice shortly after McLean advised Ubiquiti that the Default Notice did not require a response.

51. On January 16, 2020, Peraso purported to terminate the License Agreement based on Ubiquiti's alleged failure to remedy the alleged material breach set forth in the Notice of Default. Upon information and belief, this notice of termination was provided by Peraso to the US-based hardware company in an effort to facilitate a potential sale of Peraso.

52. Ubiquiti has performed each of its obligations under the License Agreement and is not in breach of any of its obligations under the License Agreement.

53. Peraso has ceased performing its obligations under the License Agreement.

54. As a result of the purported termination of the License Agreement by Peraso, Ubiquiti has been deprived of access to the chipsets under the terms of the License Agreement and has been damaged in an amount to be determined at trial and believed to be in excess of $5 million.

55. As a result of the breach of the License Agreement by Peraso, Ubiquiti has been deprived of access to the chipsets under the terms of the License Agreement and has been damaged in an amount to be determined at trial.

### FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT (PERASO)

56. Plaintiff repeats and realleges paragraphs 1 through 55 of this Second Amended Complaint as if fully set forth herein.

57. Ubiquiti has fulfilled all of its obligations under the License Agreement and, therefore, is not in breach of any contract or agreement with Peraso.

58. Peraso persists in asserting -- incorrectly and wrongly -- that Ubiquiti materially breached the License Agreement and that the License Agreement has been terminated.

59. The dispute between the Ubiquiti and Peraso is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202.

60. Ubiquiti is entitled to a judgment from this court declaring that Ubiquiti is not in breach of the License Agreement; that the License Agreement is in full force and effect; and that Peraso is obligated to honor the terms of the License Agreement, including its obligation and to make the chipsets available to Ubiquiti exclusively as required by the License Agreement

<u>SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT (PERASO)</u>

61. Plaintiff repeats and realleges paragraphs 1 through 60 of this Second Amended Complaint as if fully set forth herein.

62. Ubiquiti has fulfilled all of its obligations under the License Agreement and, therefore, is not in breach of any contract or agreement with Peraso.

63. Peraso has ceased performing its obligations under the License Agreement. Therefore, Peraso is in breach of the License Agreement.

64. As a result of the breach of the License Agreement by Peraso, Ubiquiti has been damaged in an amount to be determined at trial.

<u>THIRD CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING (PERASO)</u>

65. Plaintiff repeats and realleges paragraphs 1 through 64 of this Second Amended Complaint as if fully set forth herein.

66. Implied in all contracts is a covenant of good faith and fair dealing which obligates the parties to act in good faith, to use their best efforts to deal fairly with one

another, and to do nothing that will impede the other party from obtaining the benefits of the contract.

67. By the conduct as set forth above, Peraso has breached the covenant of good faith and fair dealing and has wrongfully deprived, impaired, destroyed and injured the rights of the Ubiquiti to receive the value, benefit and fruits of the License Agreement and of the promise to develop and make chipsets to be licensed exclusively to Ubiquiti.

68. As a result of the breach by Peraso of the covenant of good faith and fair dealing, Ubiquiti has suffered damages in an amount to be determined at trial and believed to be no less than $5 million.

## FOURTH CAUSE OF ACTION FOR CONVERSION
(PERASO)

69. Plaintiff repeats and realleges paragraphs 1 through 68 of this Second Amended Complaint as if fully set forth herein.

70. Peraso's unlawful termination of the License Agreement, as alleged above, was intended to and, in fact, did appropriate to Peraso, without justification, the rights, benefits and interest in and to the chipsets that were exclusively licensed to Ubiquiti under the License Agreement.

71. The termination of the License Agreement was unlawful and constitutes conversion of Ubiquiti's exclusive interest in the chipsets.

72. As a direct and proximate result of Peraso's conduct, Ubiquiti has been damaged in an amount to be proven at the time of trial, but believed to be in excess of $5 million, and Ubiquiti is entitled as well to punitive damages, prejudgment interest, and reimbursement of legal fees.

## FIFTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT (McLEAN AND INDIVIDUAL DEFENDANTS)

73. Plaintiff repeats and realleges paragraphs 1 through 72 of this Second Amended Complaint as if fully set forth herein.

74. The License Agreement was and is a valid contract between Ubiquiti and Peraso.

75. Each of the Individual Defendants, through his participation in the corporate governance of Peraso and as a member of its board of directors, was aware of the License Agreement and its terms.

76. Each of the Individual Defendants attended a Peraso board meeting on December 21, 2018, at which the License Agreement was discussed and explained by McLean, as reflected in the official minutes of that board meeting which were delivered to Ubiquiti as a condition precedent to Ubiquiti's obligation to enter into the Subscription Agreement and its collateral documents, including the License Agreement.

77. McLean and each of the Individual Defendants, through his participation in the corporate governance of Peraso as a member of its board of directors, was aware that the U.S.-based hardware company was not interested in purchasing Peraso so long as Ubiquiti had the exclusive rights to certain chipsets being developed by Peraso as provided in the License Agreement.

78. McLean and each of the Individual Defendants, through his participation in the corporate governance of Peraso as a member of its board of directors, was aware that Ubiquiti was not in breach of its obligations under the License Agreement and that there was no legal basis for terminating the License Agreement as of December 11, 2019.

79. McLean and the Individual Defendants, acting in concert, caused Peraso to terminate the License Agreement unlawfully and without justification.

80. McLean and the Individual Defendants, acting in concert, caused Peraso to issue the Notice of Default, knowing that Ubiquiti was not in default under the terms of the License Agreement.

81. McLean and the Individual Defendants, acting in concert, caused Peraso to terminate the License Agreement even though terminating the License Agreement was not in the best interests of Peraso and its shareholders other than McLean and the Venture Funds.

82. By causing the issuance of the false Notice of Default purporting to terminate the License Agreement, McLean acted in furtherance of his personal gain in an attempt to cause a change of control transaction that would result in the immediate vesting of his options in Peraso stock.

83. Each of the Individual Defendants acted in furtherance of his personal gain through his participation in and employment by one of the Venture Funds (Whitaker, Abbott, Adderly, Imed Zine and Riadh Zine), by causing the issuance of the false Notice of Default purporting to terminate the License Agreement.

84. McLean's and the Individual Defendants' tortious interference with the contractual relations between Ubiquiti and Peraso has caused damage to Ubiquiti in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION FOR FRAUD (McLEAN)

85. Plaintiff repeats and realleges paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

86. On December 11, 2019, McLean advised Ubiquiti that Peraso would issue the Default Notice but the Default Notice did not require a response because the Third Tranche Development Milestones had not been achieved prior to October 31, 2019.

87. McLean's representation to Ubiquiti that Peraso would not attempt to enforce the Default Notice was false when made.

88. McLean knew that his representation regarding the Default Notice was false when made. Only days before representing to Ubiquiti that Ubiquiti did not have to respond to the Default Notice, McLean was negotiating with the US-based hardware company the terms of an exclusivity agreement that would prohibit Peraso from seeking financing from any other entity, knowing that the US-based hardware company would look more favorably on a transaction with Peraso if the License Agreement had been terminated or modified. In contrast to the additional investment to be made in Peraso by Ubiquiti if Peraso had achieved the Third Tranche Development Milestones prior to October 31, 2019, the transaction with the US-based hardware company would result in the immediate vesting of the millions of options held by McLean.

89. McLean intended that Ubiquiti would rely on the false representation and would not prepare a response to the Notice of Default as required by the License Agreement.

90. In light of the fact that i) between November 1, 2019, and December 11, 2019, Peraso had never claimed that it was entitled to Ubiquiti's performance of those obligations that would have been triggered had Peraso met the Third Tranche Development Milestones, ii) Peraso had not provided Ubiquiti with deliverables sufficient to "demonstrate to the reasonable satisfaction of" Ubiquiti that Peraso had

achieved the Third Tranche Development Milestones by or before October 31, 2019, and iii) after October 31, 2019, and until the receipt of the false Default Notice, Peraso and Ubiquiti continued to cooperate on the development of chips and engage in various activities and discussions across all levels of both organizations, Ubiquiti reasonably relied on the false representation. Had Ubiquiti been aware that Peraso would, in fact, take the position that a response to the Notice of Default was required, Ubiquiti would have responded in a manner consistent with its obligations under the License Agreement.

91. As a result of the fraud committed by the McLean, Peraso purported to terminate the License Agreement and Ubiquiti has been harmed in an amount to be determined at trial but believed to be in excess of $5 million.

WHEREFORE, plaintiff Ubiquiti, respectfully requests that this Court:

A. Enter a declaratory judgment holding that Ubiquiti is not in breach of the License Agreement;

B. Enter a declaratory judgment holding that the License Agreement is in full force and effect;

C. Enter a declaratory judgment holding that Peraso is obligated to honor the terms of the License Agreement, including its obligation and to make the chipsets available to Ubiquiti exclusively as required by the License Agreement;

D. Award Ubiquiti compensatory damages for the acts complained of herein in an amount to be determined at trial and believed to be in excess of $5 million;

E.  On its Fourth, Fifth and Sixth Causes of Action, award Ubiquiti compensatory damages in an amount to be proven at trial and believed to be in excess of $5 million, together with punitive damages, prejudgment interest and legal fees;

F.  Award to Ubiquiti its full costs, disbursements, and reasonable attorneys' fees incurred in this action; and

G.  Award to Ubiquiti such additional and further relief as the Court deems just and proper.

Dated: New York, New York
       May 22, 2020

                                  /s/     Mario Aieta
                                  Mario Aieta
Peggy S. Chen
DUANE MORRIS LLP
230 Park Avenue
New York, New York  10169
Phone: (212) 818-9200
Fax: (212) 818-9606
maieta@duanemorris.com
pschen@duanemorris.com

Attorneys for Plaintiff
Ubiquiti Inc.