# Exhibit A

Ken Coleman
Jonathan Cho
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone:     (212) 610-6300
Facsimile:     (212) 610-6399

*Counsel to Ernst & Young Inc., as the Monitor*
*and Foreign Representative of Peraso Technologies Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | Chapter 15 |
| PERASO TECHNOLOGIES INC.,[1] | |
| Debtor in a Foreign Proceeding. | Case No. 20-_____ (___) |

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN
## PROCEEDING AND RELATED RELIEF

Ernst & Young Inc. is the court-appointed monitor (the "**Monitor**") and authorized

foreign representative of Peraso Technologies Inc. ("**Peraso**") in a proceeding (the "**Canadian**

**Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as

amended, the "**CCAA**"), pending before the Ontario Superior Court of Justice, Commercial List

(the "**Ontario Court**").

The Monitor has commenced this chapter 15 case ancillary to the Canadian

Proceeding and respectfully files this *Verified Petition for Recognition of Foreign Proceeding and*

---

[1]     The last four digits of the United States Tax Identification Number, or similar foreign identification number, as
applicable, for Peraso Technologies Inc. are 8747

Case 2:20-cv-01362-LPS-CJW Document 93-40 Filed 06/10/20 Page 3 of 42

*Related Relief* (the "**Chapter 15 Petition**"), with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "**Bankruptcy Code**") seeking the entry of an order substantially in the form annexed hereto as Exhibit A (the "**Proposed Order**"): (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code; and (ii) giving full force and effect in the United States to the Initial Order of the Ontario Court dated June 3, 2020 (together with any extensions or amendments thereof authorized by the Ontario Court, the "**Initial Order**").

The Monitor has also filed: (i) a *Memorandum of Law in Support of Verified Petition for Recognition of Foreign Proceeding and Related Relief* setting forth the legal argument for the relief sought in the Chapter 15 Petition (the "**Memorandum of Law**"); and (ii) an *Emergency Motion for Provisional Relief* seeking certain provisional relief pending final disposition of the Chapter 15 Petition (the "**Provisional Relief Motion**").

In support of the Chapter 15 Petition, the Monitor respectfully states as follows:

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, section 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference of the United States District Court for the Southern District of New Yor*k, dated January 31, 2012, Reference M-431. *See In re Standing Order of Reference Re*: Title 11, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

1.      For a detailed description of Peraso's business, corporate organization, capital structure, and circumstances leading to the Canadian Proceeding, the Court is respectfully referred to: (i) the *Affidavit of Ronald Glibbery* in support of the commencement of the Canadian Proceeding sworn to June 2, 2020 (the "**Glibbery Affidavit**"); and (ii) the *Pre-Filing Report of the Proposed Monitor* dated June 2, 2020 (the "**Pre-Filing Report**"). The Glibbery Affidavit and the Pre-Filing Report were submitted to the Ontario Court at the commencement of the Canadian Proceeding and are annexed as Exhibits A and B, respectively, to the Declaration of Ken Coleman dated June 3, 2020 and filed contemporaneously herewith (the "**Coleman Declaration**").

A.     <u>Introduction</u>

2.      Peraso is a small, private Canadian fabless semiconductor company that specializes in the development of integrated circuits and chipsets for use in wireless technology that operates on the 60 GHz band.[2] The 60 GHz band is a band of extremely high radio frequencies that allow the short-range transmission of data at high data speeds up to multiple gigabits per second.[3] Wireless technology that operates on the 60 GHz band can be used in a variety of applications, including the creation of high-speed wireless networks and the delivery of high-speed broadband.[4]

3.      Peraso's current revenue is primarily derived from engineering services, as it is a developing company and not all of its products are currently available for sale.[5] Going

---

[2]   Glibbery Affidavit ¶¶ 6,11.
[3]   Glibbery Affidavit ¶ 11.
[4]   Glibbery Affidavit ¶ 11.
[5]   Glibbery Affidavit ¶ 17.

forward, Peraso anticipates that its revenue will be generated from two core business segments: software and chipsets.[6] Peraso is in the process of leveraging its 60 GHz wireless technology expertise and related intellectual property to enter the 5G wireless technology market.[7]

4.    Peraso's commencement of the Canadian Proceeding has been driven in large part by an ongoing dispute with Ubiquiti Inc. and certain of its affiliates (collectively, "**Ubiquiti**") arising out of a late 2018 transaction under which Peraso would develop certain chipsets as per Ubiquiti's specifications and Ubiquiti would provide Peraso with equity financing, totaling $15 million across three tranches, upon the satisfaction of certain pre-agreed development milestones.[8] Ubiquiti, a large publicly-traded wireless networking company based in New York City, is Peraso's largest customer—responsible for approximately 95% of Peraso's component revenue and 40% of Peraso's overall revenue—and one of its shareholders.[9] As Peraso was and remains in the early stages of generating revenue, with significant research and development, marketing, and other costs that have to date greatly exceeded its revenues, the funding from the Ubiquiti transaction was critical for Peraso to fund its operations and remain solvent.[10]

5.    In 2019, Peraso did not receive $10 million of expected investment from Ubiquiti, giving rise to serious financial challenges and concerns about its solvency.[11] Peraso has since engaged in efforts to obtain alternative financing, including additional investment or an acquisition.[12] Further, in order to address immediate funding needs, Peraso issued approximately

---

[6]    Glibbery Affidavit ¶ 17.
[7]    Glibbery Affidavit ¶ 19.
[8]    Glibbery Affidavit ¶¶ 28-33.
[9]    Glibbery Affidavit ¶¶ 6, 24.
[10]   Glibbery Affidavit ¶ 31.
[11]   Glibbery Affidavit ¶¶ 34-38, 77.
[12]   Glibbery Affidavit ¶ 40.

$1.75 million of secured notes in 2019 (the "**2019 Notes**"),[13] followed by another issuance of approximately $3.88 million in 2020 (the "**2020 Notes**").[14]

6.      On January 16, 2020, Peraso sent notice to terminate the License Agreement (and therefore the exclusivity provision therein) on the basis that Ubiquiti failed to provide Peraso with notice of its acceptance or rejection of Peraso's satisfaction of two milestones, as was required under the License Agreement.[15]

7.      Shortly thereafter, Ubiquiti commenced multiple legal proceedings against Peraso and certain of its now-former and current directors in Canada and the United States, challenging, among other things, the termination of the licensing and development arrangements and the propriety of certain steps taken by Peraso to secure additional financing in 2020.[16] The cloud cast by the litigations in both jurisdictions has thus far prevented Peraso from raising additional funds, pursuing a sales process, or even marketing certain of its products.[17]

8.      While the proceeds of the 2019 Notes and the 2020 Notes allowed Peraso to meet certain of its immediate obligations, including payroll,[18] Peraso's monthly cash burn is approximately $1 million and it has cash reserves of less than $1.4 million.[19] Peraso therefore anticipates it will run out of cash by late June 2020.[20] The ongoing efforts to respond to the

---

[13]   Glibbery Affidavit ¶ 40.
[14]   Glibbery Affidavit ¶¶ 54-59.
[15]   Glibbery Affidavit ¶ 45.
[16]   Glibbery Affidavit ¶¶ 49-51, 60-66.
[17]   Glibbery Affidavit ¶¶ 7, 77-85.
[18]   Glibbery Affidavit ¶ 78.
[19]   Glibbery Affidavit ¶ 87.
[20]   Glibbery Affidavit ¶ 87.

litigations are also a significant strain on Peraso's already-limited resources.[21] Thus, on June 3, 2020, Peraso commenced the Canadian Proceeding to, among other things, stabilize its operations and resolve its dispute with Ubiquiti in order to improve its prospects for additional financing or investment.[22]

B.      Events Leading to the Canadian Proceeding

9.      On December 21, 2018, Peraso and Ubiquiti Inc. entered into a *License and Development Agreement* dated December 21, 2018 (the "**License Agreement**"), under which Peraso would develop certain chipsets in accordance with Ubiquiti's specifications and grant Ubiquiti certain related intellectual property and exclusivity rights.[23] In particular, the License Agreement included an exclusivity clause under which, with few exceptions, Peraso would be restricted from manufacturing, distributing, offering or selling any of the chipsets covered by the License Agreement in select markets other than to Ubiquiti or affiliates of Ubiquiti (the "**Exclusivity Clause**").[24]

10.     The parties entered into the License Agreement as part of a larger transaction under which, as Peraso progressed through three development milestones ("**Tranche Development Milestones**") established under the License Agreement, Ubiquiti would cause its Canadian affiliate, Ubiquiti Networks Canada Inc. ("**Ubiquiti Canada**"), to provide Peraso with additional equity capital by purchasing additional Class C Convertible Preferred

---

[21]   Glibbery Affidavit ¶ 7.
[22]   Glibbery Affidavit ¶ 8.
[23]   Glibbery Affidavit ¶¶ 28-29.
[24]   Glibbery Affidavit ¶ 29.

Shares of Peraso pursuant to a *Class C Series 1 Convertible Preferred Share Subscription Agreement* dated December 21, 2018 (the "**Subscription Agreement**").[25]

11.  In connection with the transaction, Peraso and Ubiquiti Canada also entered into a *Letter Agreement in respect of Class C Series 1 Convertible Preferred Share Subscription Agreement* dated December 21, 2018 to document certain ancillary agreements relating to the Subscription Agreement (the "**Letter Agreement**").[26] Peraso and Ubiquiti Cayman Limited ("**Ubiquiti Cayman**"), a Cayman affiliate of Ubiquiti, entered into a *Master Purchase and Supply Agreement* dated December 21, 2018 for the supply of certain chipset and related products (the "**Supply Agreement**").[27]

12.  The Tranche Development Milestones and the related funding obligations under the Subscription Agreement were material aspects of the transaction between Peraso and Ubiquiti because they provided a predictable flow of capital to Peraso during a period in which it was still in the early stages of generating revenue. Peraso's business depended on this flow of capital to fund its operations and, more generally, to remain solvent.[28]

13.  As the first Tranche Development Milestone had already been satisfied at the time Peraso and Ubiquiti entered into the License Agreement, Ubiquiti Canada purchased 4,583,164 Class C Convertible Preferred Shares for $5 million at the closing of the transaction on December 21, 2018.[29] In connection with such purchase, Peraso and its shareholders entered into

---

[25]  Glibbery Affidavit ¶ 30.
[26]  Glibbery Affidavit ¶ 28.
[27]  Glibbery Affidavit ¶ 28.
[28]  Glibbery Affidavit ¶ 31.
[29]  Glibbery Affidavit ¶ 32.

an *Eighth Amended and Restated Unanimous Shareholders Agreement* dated December 21, 2018, pursuant to which Ubiquiti Canada, notwithstanding its relatively small equity position, was granted certain limited observer rights on Peraso's board of directors (the "**Peraso Board**").[30]

14.     On January 29, 2019, Peraso gave notice to Ubiquiti that it had met the second Tranche Development Milestone and that, accordingly, Ubiquiti Canada was required to purchase $2 million of additional Class C Convertible Preferred Shares but did not do so.[31]

15.     On October 31, 2019, Peraso gave notice to Ubiquiti that it had met the third Tranche Development Milestone and that, accordingly, Ubiquiti Canada was required to purchase $8 million of additional Class C Convertible Preferred Shares but did not do so.[32]

16.     The $10 million total investment that Peraso expected to receive from Ubiquiti Canada upon the satisfaction of the second and third Tranche Development Milestones was critical to Peraso's ability to continue its operations, and the absence of those funds would raise serious solvency concerns.[33] Accordingly, on or about October 1, 2019, anticipating that neither the second nor third Tranche Development Milestones payments would be made, Peraso began to explore potential alternative sources of financing. Peraso informed Ubiquiti that it was doing so and invited Ubiquiti, among others, to enter into a term sheet whereby Peraso would issue secured notes, i.e., the 2019 Notes.[34]

---

[30]   Glibbery Affidavit ¶ 33.
[31]   Glibbery Affidavit ¶ 34.
[32]   Glibbery Affidavit ¶ 35.
[33]   Glibbery Affidavit ¶ 40.
[34]   Glibbery Affidavit ¶ 40.

17.     Peraso subsequently completed the issuance of the 2019 Notes, in the aggregate principal amount of $1,748,035.40, to Polar Multi-Strategy Master Fund ("**Polar**") and funds affiliated with Roadmap Capital Inc. ("**Roadmap**").[35] Ubiquiti was offered the opportunity to participate in the 2019 Notes but declined to do so.[36] The 2019 Notes carry an interest rate of 6% per annum and mature on December 31, 2023 (the 2019 Notes originally matured on June 30, 2025 but their terms were amended on March 13, 2020).[37]

18.     On December 11, 2019, Peraso sent a written notice of default to Ubiquiti, asserting that Ubiquiti's failure to accept or reject Peraso's satisfaction of the second and third Tranche Development Milestones were defaults and demanding cure within 30 days.[38] Ubiquiti did not cure and on January 16, 2020, Peraso took steps to terminate the License Agreement.[39]

19.     On February 6, 2020, Peraso entered into an exclusivity agreement with a potential third-party purchaser, and on or about the same day, Peraso provided Ubiquiti with notice that it had done so.[40]

20.     Shortly thereafter, on February 14, 2020, Ubiquiti filed a complaint against Peraso in the United States District Court for the Southern District of New York. This litigation remains pending and is captioned *Ubiquiti Inc. v. Peraso Technologies Inc.*, Case No. 1:20-cv-01312-LTS-GWG (S.D.N.Y.) (the "**License Litigation**").[41] In the License Litigation, Ubiquiti

---

[35]    Glibbery Affidavit ¶ 43.
[36]    Glibbery Affidavit ¶ 44.
[37]    Glibbery Affidavit ¶ 43.
[38]    Glibbery Affidavit ¶ 45.
[39]    Glibbery Affidavit ¶ 45.
[40]    Glibbery Affidavit ¶ 46.
[41]    Glibbery Affidavit ¶ 47.

alleges that Peraso's termination of the License Agreement was improper and seeks various forms of declaratory and monetary relief.[42] On March 10, 2020, Ubiquiti filed an amended complaint that added William McLean, William James Whitaker, Shawn Abbott, David Adderley, Imed Zine and Riadh Zine, all of whom were members of the Peraso Board at the time of the termination, as personal defendants, all of whom were members of the Peraso Board at the time of the termination, as personal defendants (collectively, the "**Peraso Board Defendants**").[43] As a general matter, Ubiquiti seeks, among other things: (i) a declaratory judgment that the License Agreement is in full force and effect and that it is not in breach of its obligations under the License Agreement; (ii) a declaratory judgment that Peraso is obligated to honor the terms of the License Agreement, including the Exclusivity Clause; and (iii) monetary damages of at least $5 million.[44] Peraso and the Peraso Board Defendants have denied Ubiquiti's allegations.[45] Peraso has also filed counterclaims seeking, among other things: (x) a declaration that Peraso fulfilled its obligations under the License Agreement; (y) a declaration that Ubiquiti failed to fulfill its obligations under the License Agreement; and (z) monetary damages.[46] A number of deadlines in the License Litigation are expected to occur within the next few weeks. In accordance with a scheduling order entered in the License Litigation on May 21, 2020: (i) Peraso and the Peraso Board Defendants must respond to Ubiquiti's second amended complaint by June 12, 2020; (ii) initial document requests and initial interrogatories shall be served by June 24, 2020; and (iii) the deadline for joining parties or filing amended pleadings is June 30, 2020.

---

[42]  Glibbery Affidavit ¶ 47.
[43]  Glibbery Affidavit ¶ 49.
[44]  Glibbery Affidavit ¶ 50.
[45]  Glibbery Affidavit ¶ 51.
[46]  Glibbery Affidavit ¶ 51.

Case 2:20-cv-01512-LDG-GWG  Document 53-1  Filed 06/10/20  Page 12 of 42

21. The License Litigation is the only pending litigation in the United States to which Peraso is a party.

22. On or about February 22, 2020, the potential third-party purchaser informed Peraso that it was unwilling to move forward with the acquisition without a resolution of the License Litigation.[47]

23. By February 2020, Peraso again faced an imminent risk of insolvency and anticipated that by March 13, 2020, it would be unable to meet all of its obligations as they came due, including payroll.[48] On February 28, 2020, certain members of the Peraso Board resigned,[49] and on March 2, 2020, the disinterested remaining members of the Peraso Board approved, subject to shareholder approval, a term sheet authorizing the offering of additional secured notes backstopped by Roadmap, i.e., the 2020 Notes.[50]

24. Following such approval, on March 2, 2020, the Peraso Board distributed a Management Information Circular to shareholders scheduling a shareholder meeting for March 12, 2020 to consider the offering of the 2020 Notes.[51] On March 3, 2020, the Peraso Board distributed a Pre-emptive Rights Notice to shareholders offering shareholders the opportunity to subscribe for the 2020 Notes on the same terms.[52]

---

[47] Glibbery Affidavit ¶ 48.
[48] Glibbery Affidavit ¶ 52.
[49] Glibbery Affidavit ¶ 53.
[50] Glibbery Affidavit ¶ 54.
[51] Glibbery Affidavit ¶ 55.
[52] Glibbery Affidavit ¶ 56.

25. Ubiquiti declined to participate in the 2020 Notes[53] but, on March 11, 2020, tendered a bridge loan facility as an alternative source of financing that, in the view of the Peraso Board, was silent with respect to material terms and was subject to various conditions that could not be satisfied.[54] The next day, Peraso held the scheduled shareholder meeting, at which the shareholders present were informed of Ubiquiti's proposal.[55] The shareholders unanimously approved the issuance of the 2020 Notes. Ubiquiti did not attend the shareholder meeting.[56]

26. The issuance of the 2020 Notes closed on March 13, 2020, allowing Peraso to meet certain of its obligations that were due at that time.[57] Roadmap was the only party to subscribe to the 2020 Notes.[58] The 2020 Notes carry an interest rate of 6% per annum and mature on December 31, 2023.[59]

27. On April 8, 2020, Ubiquiti Canada filed a Statement of Claim with the Ontario Court naming Peraso, the Peraso Board Defendants, Ronald Glibbery, Roadmap, and certain Roadmap affiliates as defendants and seeking, among other things: (i) a declaration that certain steps taken by Peraso in securing financing in March 2020 amounted to oppression pursuant to s. 248 of the *Business Corporations Act (Ontario)*; and (ii) a declaration that Peraso's March 12, 2020 shareholder meeting, together with any and all votes taken, and resolutions approved, at such meeting, are void (the "**Oppression Litigation**").[60]

---

[53] Glibbery Affidavit ¶ 56.
[54] Glibbery Affidavit ¶ 57.
[55] Glibbery Affidavit ¶ 58.
[56] Glibbery Affidavit ¶ 58.
[57] Glibbery Affidavit ¶ 59.
[58] Glibbery Affidavit ¶ 54.
[59] Glibbery Affidavit ¶ 54.
[60] Glibbery Affidavit ¶¶ 60-63.

28.     In addition to the License Litigation and the Oppression Litigation, on February 19, 2020, Ubiquiti Canada filed a Notice of Application with the Ontario Court alleging that Peraso was in default of its obligations to provide Ubiquiti Canada, through an observer appointed by Ubiquiti Canada to observe the Peraso Board, with notices of meetings of the Peraso Board and all written information provided to the Peraso Board or any committee thereof.[61] On April 20, 2020, Ubiquiti Canada filed a second Notice of Application with the Ontario Court alleging that, despite requests from counsel for Ubiquiti Canada, Peraso failed to provide Ubiquiti Canada with access to books and records required to be maintained pursuant to s. 140(1) of the *Business Corporations Act (Ontario)*.[62]

29.     The License Litigation and the Oppression Litigation have significantly impaired Peraso's ability to seek additional financing, whether from private and public sources, or engage with potential buyers.[63] The License Litigation also impairs Peraso's ability to sell its products, as it brings into question the ongoing enforceability of the License Agreement and, in particular, the Exclusivity Clause.[64] Likewise, the Oppression Litigation raises questions about Peraso's capitalization structure and corporate governance.[65] In light of these disputes, and Peraso's ongoing liquidity issues, Peraso commenced the Canadian Proceeding in order to stabilize its operations and seek a viable path forward for its business.[66]

---

[61]    Glibbery Affidavit ¶ 64.
[62]    Glibbery Affidavit ¶ 66.
[63]    Glibbery Affidavit ¶¶ 78-82.
[64]    Glibbery Affidavit ¶ 81.
[65]    Glibbery Affidavit ¶ 81.
[66]    Glibbery Affidavit ¶ 86.

C.      Peraso's Organizational Structure

30.      Peraso is a private corporation incorporated under the laws of the Province

of Ontario, with its principal place of business at 144 Front Street West, Suite 685, Toronto,

Ontario, Canada, M5J 2L7.[67] It has no subsidiaries.[68]

31.      Pursuant to Peraso's amended articles of incorporation dated March 2,

2016, Peraso was authorized to issue common shares, Class A Convertible Preferred Shares, Class

B Convertible Preferred Shares, and Class C Convertible Preferred Shares.[69]

32.      Following a conversion of all outstanding Class A, Class B and Class C

Convertible Preferred Shares to common shares implemented on March 13, 2020, Peraso's shares

are held by the following entities, either directly or through related vehicles (all of which are

common shares):

| Investor | Shareholding | Ownership % |
|---|---|---|
| Roadmap Capital Inc. | 34,174,579 | 26.11% |
| Qorvo International Pte. Ltd | 23,122,197 | 17.67% |
| Celtic House Venture Partners Inc. | 14,197,928 | 10.85% |
| Total ESOP — Peraso Technologies Inc. Stock Option Plan | 11,883,709 | 9.08% |
| iNovia | 9,652,587 | 7.38% |
| Ontario Capital Growth Fund | 9,639,130 | 7.36% |
| VentureLink Funds | 7,405,797 | 5.66% |
| Ubiquiti Networks Canada Inc. | 5,728,955 | 4.38% |
| Integrated Device Technology Malaysia SDN BHD | 5,665,393 | 4.33% |

---

[67]    Glibbery Affidavit ¶ 12.
[68]    Glibbery Affidavit ¶ 12.
[69]    Glibbery Affidavit ¶ 13.

| Polar Multi-Strategy Master Fund | 5,227,349 | 3.99% |
| Employees | 3,693,415 | 2.82% |
| Other Investors | 400,000 | 0.31% |
| Comerica Bank | 90,000 | 0.07% |
| **Total** | **130,881,039** | **100.00%** |

In the Oppression Litigation, Ubiquiti Canada has challenged, among other things, the conversion of its Class C Convertible Preferred Shares.[70]

D.  Peraso's Liabilities

33.  As of June 2, 2020, Peraso had liabilities aggregating approximately $6.9 million, consisting of: (i) secured indebtedness owed under the 2019 Notes of approximately $1 million to Roadmap and approximately $748,035.40 to Polar; (ii) secured indebtedness owed under the 2020 Notes of approximately $3,885,000 to Roadmap; and (iii) unsecured obligations of approximately $1.42 million.[71] The 2019 Notes and the 2020 Notes rank *pari passu* and are secured by a general security interest in all present and after-acquired assets of Peraso.[72]

34.  In addition, Ubiquiti is seeking monetary damages of at least $5 million in the License Litigation, but has not quantified its requested damages in the Oppression Litigation.[73]

E.  Peraso's Assets

35.  As at December 31, 2019, Peraso had approximately $8.9 million of assets on its balance sheet.[74] Approximately $3 million consisted of property and equipment and $1.9

---

[70]  Glibbery Affidavit ¶ 14.
[71]  Glibbery Affidavit ¶¶ 70-76.
[72]  Glibbery Affidavit ¶ 72.
[73]  Glibbery Affidavit ¶ 76.
[74]  Glibbery Affidavit ¶ 68.

million consisted of cash and cash equivalents.[75] Peraso has approximately 45 patent applications and has been granted approximately 25 patents.[76]

F.    The Canadian Proceeding

36.    On June 3, 2020, Peraso commenced the Canadian Proceeding by filing an application under the CCAA with the Ontario Court.

37.    On June 3, 2020, the Ontario Court entered the Initial Order, which, among other things, appointed the Monitor and authorizes the Monitor to act as the foreign representative of the Canadian Proceeding for the purposes of seeking recognition of the Canadian Proceeding in the United States pursuant to Chapter 15 of the Bankruptcy Code, and authorizes Peraso to continue in possession and control of its assets, to continue to carry on business in a manner consistent with the preservation of its business, and to continue the use of its existing cash management system.

38.    Further, for the period until and including June 13, 2020, or such later date as the Ontario Court may subsequently order (the "**Stay Period**"), the Initial Order, among other things: (i) prevents parties from terminating or altering their agreements with Peraso without the written consent of Peraso and the Monitor or the leave of the Ontario Court; (ii) stays the commencement or continuation of proceedings against Peraso and the Monitor without the written consent of Peraso and the Monitor or the leave of the Ontario Court; and (iii) stays the commencement or continuation of certain proceedings against former, current, or future directors and officers of Peraso.

---

[75]    Glibbery Affidavit ¶ 68.
[76]    Glibbery Affidavit ¶ 69.

G.      Peraso's Center of Main Interests

      39.      Peraso's center of main interests is in Canada. Peraso is a corporation incorporated under the laws of Ontario and has offices in Toronto and Waterloo, with its main office in Toronto. None of its directors are outside of Ontario. While Peraso's Vice President of Finance is located in Arizona, Peraso's senior management is otherwise in Ontario.

      40.      As of May 19, 2020, Peraso employs 78 employees and/or contractors, 64 of whom are analog, digital and software engineers that are critical to sustainability of its business. The majority of Peraso's workers are in Ontario.

      41.      Finally, Polar and Roadmap, the holders of the 2019 Notes and the 2020 Notes and Peraso's only secured debt, are investment funds based in Ontario.

**RELIEF SOUGHT**

      42.      By this Chapter 15 Petition, the Monitor seeks the following relief:

      (A)      recognition, pursuant to section 1517 of the Bankruptcy Code, of the Canadian Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code;

      (B)      all relief afforded to foreign main proceedings automatically upon recognition pursuant to section 1520 of the Bankruptcy Code, including, without limitation, application of the stay imposed by section 362 of the Bankruptcy Code;

      (C)      enforcement of the Initial Order in the United States pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; and

(D)    such other and further relief as is appropriate under the circumstances pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

## **BASIS FOR RELIEF**

A.    Recognition of Canadian Proceeding

43.    For the reasons more fully discussed in the Memorandum of Law, the Canadian Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code because:

(A)    the Canadian Proceeding is: (i) a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code and (ii) pending where Peraso has the "center of its main interests" and is therefore a "foreign main proceeding" within the meaning of section 1502(4), in satisfaction of section 1517(a)(1);

(B)    the Monitor is the duly appointed "foreign representative" of Peraso within the meaning of section 101(24) of the Bankruptcy Code and a "person" within the meaning of section 101(41), in satisfaction of section 1517(a)(2); and

(C)    the case was properly commenced in accordance with sections 1504 and 1509 of the Bankruptcy Code and the Chapter 15 Petition meets the requirements of sections 1504 and 1515, in satisfaction of section 1517(a)(3).

44.    Recognizing the Canadian Proceeding also would not be manifestly contrary to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code. In fact, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code

18

and further cooperation between courts to the maximum extent possible as mandated by section
1525(a) of the Bankruptcy Code. Thus, the circumstances satisfy the conditions for mandatory
recognition of the Canadian Proceeding under section 1517 of the Bankruptcy Code.

B.      Enforcement of the Initial Order

45.     In connection with the recognition of the Canadian Proceeding as a "foreign
main proceeding," the Monitor also seeks an order enforcing the Initial Order in the United States.

46.     Section 1507 of the Bankruptcy Code provides that, "if recognition is
granted," a court "may provide additional assistance to a foreign representative under this title or
under other laws of the United States." 11 U.S.C. § 1507. Similarly, section 1521(a) of the
Bankruptcy Code provides that, upon recognition of a foreign proceeding, and "where necessary
to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of
any creditors, the court may grant any appropriate relief . . . ." 11 U.S.C. § 1521. Such relief
includes, among other things, "granting any additional relief that may be available to a trustee,"
with certain exceptions that are not relevant here. *Id*. Finally, section 105(a) of the Bankruptcy
Code allows the Court to "issue any order . . . necessary or appropriate to carry out the provisions
of [title 11]."

47.     By the Initial Order, the Ontario Court expressly authorized the Monitor to
seek such relief in this Court as necessary to give effect to the Initial Order in the United States.
*See* Initial Order ¶¶ 20(f) (granting the Monitor "full and complete authority to act as the
representative of the Applicant in a foreign proceeding"), 37 (authorizing and empowering the
Monitor to act as the foreign representative for purposes of having the Canadian Proceeding

Case 2:20-cv-01512-LTS-GWG  Document 58-1  Filed 06/10/20  Page 21 of 42

recognized in a jurisdiction outside of Canada). Moreover, the Ontario Court expressly requested

the assistance of courts in the United States through the following provision of the Initial Order:

> **[THE ONTARIO COURT] HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist [Peraso], the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to [Peraso] and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist [Peraso] and the Monitor and their respective agents in carrying out the terms of this Order.

Initial Order ¶ 40. The Monitor believes that enforcement of the Initial Order in connection with

the recognition of the Canadian Proceeding is necessary to give effect to such order in the United

States. Thus, in addition to the reasons set forth above, this Court should give full force and effect

in the United States to the Initial Order under well-established principles of international comity

and pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Monitor respectfully requests that this Court grant this Chapter 15 Petition and enter the Proposed Order recognizing the Canadian Proceeding as a "foreign main proceeding," enforcing the Initial Order in the United States, and granting such other relief as is appropriate under the circumstances.

Dated:  New York, New York
       June 3, 2020

**ALLEN & OVERY LLP**

By: /s/ *Ken Coleman*
Ken Coleman
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
ken.coleman@allenovery.com
jonathan.cho@allenovery.com

*Ernst & Young Inc., as the Monitor
and Foreign Representative of Peraso
Technologies Inc.*

21

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Brian Denega declares as follows:

I am a Senior Vice President and duly authorized agent of Ernst & Young Inc., which was appointed as monitor and authorized to act as foreign representative of Peraso Technologies Inc. I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (the "**Petition**"). I have read the Petition, and am informed and do believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2ⁿᵈ day of June 2020, in Toronto, Ontario, Canada

Brian Denega
Senior Vice President
Ernst & Young Inc.

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re:* | Chapter 15 |
| PERASO TECHNOLOGIES INC.,[1] | Case No. 20-_____ (___) |
| Debtor in a Foreign Proceeding. | |

## ORDER GRANTING RECOGNITION AND RELATED RELIEF

This matter was brought by Ernst & Young Inc., as the court-appointed monitor (the "**Monitor**") and authorized foreign representative of Peraso Technologies Inc. ("**Peraso**") in a proceeding (the "**Canadian Proceeding**") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, pending before the Ontario Superior Court of Justice, Commercial List (the "**Ontario Court**").

The Monitor has commenced this chapter 15 case ancillary to the Canadian Proceeding by filing an official form petition and *Verified Petition for Recognition of Foreign Proceeding and Related Relief* (collectively, the "**Chapter 15 Petition**"), with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "**Bankruptcy Code**") seeking the entry of an order: (i) recognizing the Canadian Proceeding as a "foreign main proceeding" under section 1517 of the Bankruptcy Code; and (ii) giving full force and effect in the United States to the Initial Order of the Ontario Court dated June 3, 2020, attached hereto as Exhibit 1 (together with any extensions or amendments thereof authorized by the Ontario Court, the "**Initial Order**").

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, for Peraso Technologies Inc. are 8747.

1

The Court has considered and reviewed the Chapter 15 Petition and the other pleadings and exhibits submitted by the Monitor in support thereof.  No objections were filed to the Chapter 15 Petition.

After due deliberation and sufficient cause appearing therefore, the Court finds and concludes as follows:

(A)     this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1501;

(B)     this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P);

(C)     venue is proper in this District pursuant to 28 U.S.C. § 1410;

(D)     good, sufficient, appropriate and timely notice of the filing of the Chapter 15 Petition and the hearing on the Chapter 15 Petition has been given pursuant to Local Rules 2002-4 and 9078-1 and Rule 2002(q)(1) of the Federal Rules of Bankruptcy Procedure;

(E)     the Canadian Proceeding is a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23);

(F)     the Canadian Proceeding is pending in Canada, where Peraso has the "center of its main interests" as such term is used in 11 U.S.C. § 1517(b)(1), and as such constitutes a "foreign main proceeding" pursuant to 11 U.S.C. § 1502(4) and in satisfaction of 11 U.S.C. § 1517(a)(1);

(G)     the Monitor is the duly appointed "foreign representative" of Peraso within the meaning of 11 U.S.C. § 101(24) and a "person" within the meaning of 11 U.S.C. § 101(41), in satisfaction of 11 U.S.C. § 1517(a)(2);

(H)     this case was properly commenced pursuant to 11 U.S.C. §§ 1504 and 1509 and the Chapter 15 Petition meets the requirements of 11 U.S.C. §§ 1504 and 1515, in satisfaction of 11 U.S.C. § 1517(a)(3);

(I)     the Canadian Proceeding is entitled to recognition as a "foreign main proceeding" pursuant to 11 U.S.C. § 1517(b)(1);

(J)     the Monitor is entitled to all relief afforded foreign main proceedings automatically upon recognition pursuant to 11 U.S.C. § 1520 and to additional relief pursuant to 11 U.S.C. §§ 1507 and 1521; and

    (K)    the relief granted herein is necessary and appropriate, in the interests of the public and international comity, and consistent with the public policy of the United States.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The Chapter 15 Petition is **GRANTED**.

2.    The Monitor is recognized as the "foreign representative" of Peraso within the meaning of 11 U.S.C. § 101(24).

3.    The Canadian Proceeding is recognized as a "foreign main proceeding" pursuant to 11 U.S.C. § 1517(b)(1).

4.    All automatic relief under 11 U.S.C. § 1520 shall apply in this case.

5.    The Initial Order, and any amendments or extensions thereof as may be granted from time to time by the Ontario Court, is given full force and effect in the United States pursuant to 11 U.S.C. §§ 1507 and 1521.

6.    This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief or any adversary proceeding brought in and through these cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

7.    The Monitor shall provide service and notice of this Order in accordance with the *Order Specifying Form and Manner of Service of Notice and Scheduling Recognition Hearing* entered by the Court in this case.

Dated:  New York, New York
        June __, 2020

_____
United States Bankruptcy Judge

**EXHIBIT 1**

**Initial Order**

Case 2:20-cv-01312-LTS-GWG   Document 57-1   Filed 06/19/20   Page 30 of 42

Court File No. _____

*ONTARIO*

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEDNESDAY, THE 3rd |
| | ) | |
| JUSTICE HAINEY | ) | DAY OF JUNE, 2020 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF PERASO TECHNOLOGIES INC. (the "**Applicant**")

**INITIAL ORDER**

**THIS APPLICATION**, made by the Applicant, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") proceeded on this day by way of video-conference due to the COVID-19 crisis.

**ON READING** the affidavit of Ronald Glibbery sworn June 2, 2020 (the "**Glibbery Affidavit**") and the Exhibits thereto, the pre-filing report of Ernst & Young Inc., in its capacity as proposed monitor (the "**Monitor**") to the Applicant, dated June 2, 2020, and on being advised that the secured creditors who are likely to be affected by the charges created herein were given notice, and on hearing the submissions of counsel for the Applicant and counsel for the Monitor and those other parties listed on the counsel slip, no one appearing for any other party although duly served as appears from the affidavit of service of Nicholas Avis sworn June 2, 2020 and on reading the consent of Ernst & Young Inc. to act as the Monitor,

## SERVICE

1.    **THIS COURT ORDERS** that the time for service and filing of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

## APPLICATION

2.    **THIS COURT ORDERS AND DECLARES** that the Applicant is a company to which the CCAA applies.

## POSSESSION OF PROPERTY AND OPERATIONS

3.    **THIS COURT ORDERS** that the Applicant shall remain in possession and control of its current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situated including all proceeds thereof (the "**Property**"). Subject to further Order of this Court, the Applicant shall continue to carry on business in a manner consistent with the preservation of its business (the "**Business**") and Property. The Applicant is authorized and empowered to continue to retain and employ the employees, contractors, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by it, with liberty to retain such further Assistants as it deems reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

4.    **THIS COURT ORDERS** that the Applicant shall be entitled to continue to use the central cash management system currently in place as described in the Glibbery Affidavit or replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicant of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicant, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management

System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

5.   **THIS COURT ORDERS** that the Applicant shall be entitled but not required to pay the following expenses whether incurred prior to, on or after the date of this Order:

(a)   all outstanding and future wages, salaries, employee benefits, vacation pay and expenses payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements; and

(b)   the fees and disbursements of any Assistants retained or employed by the Applicant in respect of these proceedings, at their standard rates and charges.

6.   **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein, the Applicant shall be entitled but not required to pay all reasonable expenses incurred by the Applicant in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)   all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers' insurance), maintenance and security services; and

(b)   payment for goods or services actually supplied to the Applicant following the date of this Order.

7.   **THIS COURT ORDERS** that the Applicant shall remit, in accordance with legal requirements, or pay:

(a)   any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

Case 2:20-cv-01312-LTS-GWG   Document 57-1   Filed 06/19/20   Page 33 of 42

(b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**")
        required to be remitted by the Applicant in connection with the sale of goods and
        services by the Applicant, but only where such Sales Taxes are accrued or collected
        after the date of this Order, or where such Sales Taxes were accrued or collected
        prior to the date of this Order but not required to be remitted until on or after the
        date of this Order, and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or
        any political subdivision thereof or any other taxation authority in respect of
        municipal realty, municipal business or other taxes, assessments or levies of any
        nature or kind which are entitled at law to be paid in priority to claims of secured
        creditors and which are attributable to or in respect of the carrying on of the
        Business by the Applicant.

8.      **THIS COURT ORDERS** that, except as specifically permitted herein, the Applicant is
hereby directed, until further Order of this Court: (a) to make no payments of principal, interest
thereon or otherwise on account of amounts owing by the Applicant to any of its creditors as of
this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in
respect of any of its Property; and (c) to not grant credit or incur liabilities except in the ordinary
course of the Business.

**RESTRUCTURING**

9.      **THIS COURT ORDERS** that the Applicant shall, subject to such requirements as are
imposed by the CCAA, have the right to continue negotiations with stakeholders in an effort to
pursue restructuring options for the Applicant including without limitation all avenues of
refinancing of their Business or Property, in whole or in part, subject to prior approval of this
Court being obtained before any material refinancing.

**NO PROCEEDINGS AGAINST THE APPLICANT OR THE PROPERTY**

10.     **THIS COURT ORDERS** that until and including June 13, 2020, or such later date as this
Court may subsequently order (the "**Stay Period**"), no proceeding or enforcement process in or
out of any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or
in respect of the Applicant or the Monitor, or affecting the Business or the Property, except with

the written consent of the Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Applicant or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

## NO EXERCISE OF RIGHTS OR REMEDIES

11.     **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicant or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicant to carry on any business which the Applicant is not lawfully entitled to carry on, (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

## NO INTERFERENCE WITH RIGHTS

12.     **THIS COURT ORDERS** that during the Stay Period, except with the written consent of the Applicant and the Monitor, or leave of this Court, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, lease, sublease, licence or permit in favour of or held by the Applicant.

## CONTINUATION OF SERVICES

13.     **THIS COURT ORDERS** that during the Stay Period, all Persons having oral or written agreements with the Applicant or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Business or the Applicant, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicant, and that the Applicant shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges

for all such goods or services received after the date of this Order are paid by the Applicant in accordance with normal payment practices of the Applicant or such other practices as may be agreed upon by the supplier or service provider and each of the Applicant and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

14.     **THIS COURT ORDERS** that, notwithstanding anything else in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicant. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

15.     **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicant with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicant whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Applicant, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicant or this Court.

## DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE

16.     **THIS COURT ORDERS** that the Applicant shall indemnify its directors and officers against obligations and liabilities that they may incur as directors or officers of the Applicant after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

17.     **THIS COURT ORDERS** that the directors and officers of the Applicant shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property,

which charge shall not exceed an aggregate amount of $650,000 as security for the indemnity provided in paragraph 16 of this Order. The Directors' Charge shall have the priority set out in paragraphs 27 and 29 herein.

18.    **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Applicant's directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 16 of this Order.

## APPOINTMENT OF MONITOR

19.    **THIS COURT ORDERS** that Ernst & Young Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Applicant with the powers and obligations set out in the CCAA or set forth herein and that the Applicant and its shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Applicant pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

20.    **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)    monitor the Applicant's receipts and disbursements;

(b)    report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)    advise the Applicant in its preparation of the Applicant's cash flow statements;

(d)    have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the

Applicant, to the extent that is necessary to adequately assess the Applicant's business and financial affairs or to perform its duties arising under this Order;

(e) be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order;

(f) have full and complete authority to act as the representative of the Applicant in a foreign proceeding; and

(g) perform such other duties as are required by this Order or by this Court from time to time.

21. **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

22. **THIS COURT ORDERS** that that the Monitor shall provide any creditor of the Applicant with information provided by the Applicant in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicant is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicant may agree.

23. **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

24. **THIS COURT ORDERS** that the Monitor, Canadian and U.S. counsel to the Monitor (Thornton Grout Finnigan LLP and Allen & Overy LLP) and Canadian and U.S. counsel to the Applicant (Stikeman Elliott LLP and Hodgson Russ LLP) shall be paid their reasonable fees and

disbursements, and applicable taxes, in each case at their standard rates and charges, by the Applicant as part of the costs of these proceedings. The Applicant is hereby authorized and directed to pay the accounts of the Monitor, Canadian and U.S. counsel to the Monitor and Canadian and U.S. counsel to the Applicant.

25.    **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

26.    **THIS COURT ORDERS** that the Monitor, Canadian and U.S. counsel to the Monitor and Canadian and U.S. counsel to the Applicant shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $200,000, as security for their professional fees and disbursements, plus applicable taxes, incurred at their standard rates and charges of the Monitor and such counsel, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 27 and 29 hereof.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

27.    **THIS COURT ORDERS** that the priorities of the Directors' Charge and the Administration Charge, as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of $200,000); and
>
> Second – Directors' Charge (to the maximum amount of $650,000).

28.    **THIS COURT ORDERS** that the filing, registration or perfection of the Directors' Charge or the Administration Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

29.    **THIS COURT ORDERS** that each of the Directors' Charge and the Administration Charge (all as constituted and defined herein) shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, charges and

encumbrances, claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person.

30.     **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicant shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Directors' Charge or the Administration Charge unless the Applicant also obtains the prior written consent of the Monitor, and the beneficiaries of the Directors' Charge and the Administration Charge, or further Order of this Court.

31.     **THIS COURT ORDERS** that the Directors' Charge and the Administration Charge, shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds the Applicant, and notwithstanding any provision to the contrary in any Agreement:

(a)     the creation of the Charges shall not create or be deemed to constitute a breach by the Applicant of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges; and

(c)     the payments made by the Applicant pursuant to this Order and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

32.   **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicant's interest in such real property leases.

## SERVICE AND NOTICE

33.   **THIS COURT ORDERS** that the Monitor shall (i) without delay, publish in the Globe & Mail (national edition) a notice containing the information prescribed under the CCAA, (ii) within five days after the date of this Order, or as soon as reasonably practicable thereafter (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, or cause to be sent, in the prescribed manner (including by email), a notice to every known creditor who has a claim against the Applicant of more than $1,000 (excluding contractors, individual employees, former employees with pension and/or retirement savings plan entitlements, and retirees and other beneficiaries who have entitlements under any pension or retirement savings plans), and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

34.   **THIS COURT ORDERS** that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/eservice-commercial) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL: www.ey.com/ca/peraso.

35.   **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol is not practicable, the Applicant and the Monitor are at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal

delivery or facsimile transmission to the Applicant's creditors or other interested parties at their respective addresses as last shown on the records of the Applicant and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

36.      **THIS COURT ORDERS** that the Applicant and the Monitor and their respective counsel are at liberty to serve or distribute this Order, and other materials and orders as may be reasonably required in these proceedings, including any notices, or other correspondence, by forwarding true copies thereof by electronic message to the Applicant's creditors or other interested parties and their advisors. For greater certainty, any such distribution or service shall be deemed to be in satisfaction of a legal or judicial obligation, and notice requirements within the meaning of clause 3(c) of the *Electronic Commerce Protection Regulations*, Reg. 81000-2-175 (SOR/DORS).

## CHAPTER 15 PROCEEDINGS

37.      **THIS COURT ORDERS** that the Monitor is hereby authorized and empowered, but not required, to act as the foreign representative (the "**Foreign Representative**") in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside of Canada, including, if deemed advisable by the Monitor, to apply for recognition of these proceedings in the United States pursuant to chapter 15 of title 11 of the *United States Code*, 11 U.S.C. §§ 101-1532.

## GENERAL

38.      **THIS COURT ORDERS** that the Applicant or the Monitor may from time to time apply to this Court to amend, vary or supplement this Order or for advice and directions in the discharge of their respective powers and duties hereunder.

39.      **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicant, the Business or the Property.

40.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Applicant, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicant and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicant and the Monitor and their respective agents in carrying out the terms of this Order.

41.     **THIS COURT ORDERS** that each of the Applicant and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

42.     **THIS COURT ORDERS** that any interested party (including the Applicant and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

43.     **THIS COURT ORDERS** that this Order and all of its provisions are effective from the date it is made without any need for entry and filing.